## No. 13,012.

### OTIS ELEVATOR COMPANY *v.* MARYLAND CASUALTY COMPANY.

(33 P. [2d] 974)

Decided May 21, 1934. Rehearing denied June 12, 1934.

Messrs. McComb & Green, Mr. Walter E. Schwed, Messrs. Sims, Stransky, Brewer & Poust, Mr. James P. Carey, Jr., of counsel, for plaintiff in error.

Messrs. Blount, Silverstein & Rosner, for defendant in error.

*En Banc.*

MR. JUSTICE HOLLAND delivered the opinion of the court.

THE Maryland Casualty Company, defendant in error, was plaintiff in the trial court, and will be herein referred to as the casualty company. It obtained judgment against the Otis Elevator Company for $52,253.86. Reversal of this judgment is sought by the Otis Elevator Company which will be referred to as the Otis company.

The Oil Exchange Building, Inc., of Casper, Wyoming, erected a five story office building about 1918. Otis company, through employment by the Oil Exchange Building, installed a passenger elevator in said building, and since said installation, Otis company, by a continuation of employment, has been under agreement with the Oil Exchange Building, to repair, inspect, examine, clean and lubricate the elevator twice each month, and keep it in a safe condition for use as a passenger elevator. On November 24, 1925, the elevator, while loaded with passengers, fell from near the third floor of said building or a distance of about 35 feet into the basement. The fall was caused by the hoisting cables pulling out of their connections to the cage. A number of persons were injured. Otis company, or its insurer, settled about ten minor claims. Maurine Deakin and Inga Guysland were more seriously injured, and filed separate suits in the Wyoming court against the Oil Exchange Building, Inc., for damages.

Casualty company was the insurer of the Oil Exchange Building, Inc., and was called upon to defend these suits. It claims that it notified Otis company, and demanded that it settle these claims or defend the suits, and that if it did not do so, the casualty company would hold it, the Otis company, liable for all loss or damage sustained in taking care of the claims. The Otis company refused to enter its appearance or take responsibility for the defense, but did, through its attorneys and

officers, attend the trial, furnish evidence and provide witnesses for depositions, and gave assistance at the trial.

Trial of these suits was had to the court and judgment entered in the Deakin case for $33,395.85, which judgment was compromised for $30,000. The judgment for Guysland was settled for $2,000. The difference between the total of these judgments, and the judgment of $52,-253.86, in the case now before this court, represents various expenses incurred by the casualty company in defending and handling these two cases, including attorney's fees, court costs, witness fees, traveling expenses and interest, which the casualty company charged to the Otis company, and for a recovery of which this suit was filed.

In its complaint against Otis company, the casualty company made the following material allegations:

In 1917 and 1918, Oil Exchange Building, Inc., constructed, and has since owned, a five story office building in Casper. Otis company planned, designed, constructed and installed the passenger elevator in that building, pursuant to employment by Oil Exchange Building, Inc. At all times since the building was constructed, Otis company was employed by Oil Exchange Building, Inc., to inspect, examine, clean, and lubricate the elevator, "which services defendant agreed to perform twice each month, and impliedly warranted to perform in a careful, skillful, workmanlike and efficient manner, and, in addition thereto, defendant was employed from time to time, during said period by said corporation, Oil Exchange Building, to, and it did, make all repairs and replacements on said elevator which defendant deemed necessary to maintain said elevator in a safe condition for the use for which it was constructed and for which it was used, and defendant impliedly warranted that it would make such repairs and replacements in a careful, skillful, workmanlike and efficient manner."

A part of the elevator machinery consisted of two

hoisting cables, each of which was anchored in a cone (sometimes called a shackle or thimble) in a cross bar on the top of the elevator cage; and a safety device, which consisted, in part, of a governor located in the pent house at the top of the elevator shaft and brake shoes attached to the side of the elevator cage.

While the elevator, loaded with passengers, was descending at noon on November 24, 1925, the hoisting cables pulled out from their anchors in the top of the cage as it reached a point immediately below the third floor. The safety device failed to work and the elevator fell a distance of about thirty-five feet to the bottom of the elevator shaft, thereby injuring some of the passengers, including Mrs. Deakin and Miss Guysland. That the falling of the elevator was caused by the negligence of Otis company in the following particulars:

1. Otis company failed to adjust and regulate the safety device so that it would stop the elevator within nine feet, or a reasonable distance, after it started falling and gained excessive speed.

2. Otis company, in installing on May 29, 1925, the hoisting cables which pulled out of their anchors, not only failed to use the zinc method of anchoring cables, which is the only safe and secure method, but "carelessly and negligently failed to unwind or separate the ends of the wires from one another, failed to clean the wires with kerosene, or at all, failed to dry them, failed to straighten the ends of the wires, failed to keep them straight and unbent near their ends, * * * and failed to make thoroughly amalgamated, fused or solidified anchors on the ends of the hoisting cables * * *, without cleaning or cleansing the strands, which were greasy, and without separating, cleaning or cleansing the wires in the strands [defendant] poured molten babbitt on the bent ends of the strands in said cones for the purpose of amalgamating the ends of the strands and anchoring the end of each of the hoisting cables in the cone, and, in so doing, used a preparation of babbitt of insufficient strength

and poured into each cone an insufficient amount of babbitt to fill the spaces and interstices between the strands in the cones and between the wires in the strands and to cause the strands and wires to solidify into one metallic mass in each cone, or to thoroughly amalgamate and fuse with the babbitt.''

After its demurrer to the complaint was overruled, Otis company answered, specifically admitting and denying the allegations of the complaint. It denied that it was employed to maintain said elevator in a safe condition or that it impliedly warranted to perform its services in a careful and skillful manner; denied that it was employed to make repairs and replacements which it deemed necessary to keep said elevator in a safe condition or that it impliedly warranted to make same in a careful and skillful manner; denied that the safety device, if properly installed and regulated, would have caused the elevator to stop; denied that the proper, customary and only method of safely anchoring hoisting cables to the elevator cages was the zinc method, and that the fall of the elevator was due to the negligence of Otis company; specifically denied notice and demand to defend the suits, and in that regard alleges that its attorneys at Casper were hired to observe, and not participate in, the trial. It admitted that it did not defend said suits, and did not consent or object to any settlement thereof.

Replication was filed March, 1928. On September 12, 1931, the parties filed their stipulation that the installation contract between Otis company and the Oil Exchange Building was made in June, 1917, and that the twice a month inspection contract was made in April, 1921, and that both contracts could be introduced in evidence. A third contract under which new hoisting cables were installed, May, 1925, about six months before the accident, was admitted in evidence and is as follows:

"Service Order. No. O. D. 25301

"To Otis Elevator Company.

"Charge to Cons. Royalty Oil Company.

"Customer's Order No.......

"Address, Casper. Telephone No. ......

"Name of building, Con's. Royal Oil Bldg.

"Date wanted, At once.

"Location, Casper, Wyoming.

"Type of Elevator, 1-Otis Pass. El.

"Make repairs or furnish material for account of the undersigned, subject to the terms and conditions on the reverse side hereof, as follows:

"Install spare set drum 'counter' cables in place of broken hoist ropes. Furnish and install one set drum counterweight cables 185' long each 8 x 19⅝" dia. S. F. C. R. also furnish and install 4-guide shoe gibs, shoe #4 CF2—and 4-fibres and wicks for E. S. guide oilers. Furnish 5 gal's motor bearing oil and 2 gal's A. C. oil.

"Order taken by Ed Iverson.

"Signed A. S. Manning.

"By....................."

"(Reverse Side.)

"Terms and Conditions.

"Otis Elevator Company shall not under any circumstances be liable under or by reason of this agreement for any damage caused, directly or indirectly, by strikes, lockouts, accidents or other causes beyond its control; nor shall it be liable, directly or indirectly, for any accident, injury, breakage or damage to the elevator or any machinery, appliances or property connected therewith. The owner agrees to indemnify and save harmless Otis Elevator Company against any claims arising by reason of any accident, injury or damage to any person or persons whomsoever while riding upon, or being in or about said elevators, however caused. This order and the acceptance thereof constitutes exclusively and entirely the agreement for the service described, and no work nor inspection is included, other than that described on the opposite side."

Otis company discusses error assignments under five groups:

1. The terms and conditions of the contracts under which the elevator was installed, inspected and repaired constitute a complete defense to this action. (a) The terms and conditions of said contracts exonerating Otis company from liability are not against public policy. (b) The terms and conditions of said contracts are sufficiently broad to exempt Otis company from liability for its own negligence.

2. Fatal variance between casualty company's pleadings and its proof. (a) Allowing recovery on different theory than that stated in complaint. (b) Casualty company failed to prove the cause of action alleged in its complaint.

3. The prior Wyoming judgments form no basis for recovery against Otis company in this case. (a) The Wyoming judgments establish Oil Exchange Building, Inc.'s, active negligence, which estops Maryland Casualty Company in this case. The special findings of fact in the Wyoming case were illegally entered and should not be considered in this action. (b) If Otis company was negligent, Oil Exchange Building, Inc., was also negligent, and the doctrine that there can be no indemnity between joint tort feasors applies. (c) The Wyoming judgments do not conclude Otis company in any manner in this action.

4. Errors in the admission and rejection of evidence.

5. Errors in including improper elements in the verdict and judgment. (a) Attorney's fees and expenses not a proper element of damage. (b) Error in allowing interest on amounts paid out by casualty company.

 The validity and scope of the contracts involved may be considered and discussed together. The trial court held that the terms of these contracts did not constitute a defense for Otis company, for the reason that the terms thereof exonerating Otis company from liability were void as against public policy. Counsel for Otis company contend that a carrier may exempt itself from liability by contract for negligently performing a

service which it is not compelled by law to perform, but not in a service which it has a legal duty to perform, and places first reliance in the case of *Denver & Rio Grande R. R. Co. v. Whan,* 39 Colo. 230, 89 Pac. 39, for support of their contention. We do not believe this case and others cited to be in point, for there an employee of the carrier, as a consideration for his employment, contracted to assume the risks attendant thereon. The contract was held to exempt the carrier as to liability to the employee, but its liability to the public, whose interest was involved, still remained. In the case at bar, the public was concerned with the security of such of its citizens as would use the elevator maintained for such use. The public had the right to expect and demand that the elevator as a carrier of the public would be kept safe for its use. It was the business of Otis company—contracted for consideration—to inspect and repair said elevator, with that safety for the public in view, and the law will not permit it to escape liability for its negligence therein, by a contract which is against public policy, such as is the one relied on here. Such contracts do not change the law of public liability. No such opportunities are extended, neither can they be made a privilege by contract. 10 C. J. 714, §1154; *Denver Terminal Co. v. Cullinan,* 72 Colo. 248, 210 Pac. 602; *Adams v. C. & S. Ry. Co.,* 49 Colo. 475, 113 Pac. 1010.

It is beyond reason to construe the conditions of these contracts, relied on by Otis company for exemption, so that they will mean that Oil Exchange Building contracted to excuse and exempt Otis company from its own negligence, and the language of the exemption clause does not, in unequivocal terms, so relieve it. By Otis company's own contract—which must be construed against it as the maker—if its construction were allowed, Oil Exchange Building paid to place itself at the mercy of, and subject to, the wanton carelessness of Otis company.

As to the contention of variance between the

pleadings and proof, Otis company raised the question of uncertainty as to the nature of the cause of action by demurrer. The overruling of the demurrer by the court, and answering over by Otis company waived this objection. Again it made no objection to introduction of evidence on the grounds of variance and thereby waived the point.

■ Under the circumstances of this case, it is an action in assumpsit for moneys paid for Otis company and in its stead, after notice and demand to defend the Wyoming suits. These suits established negligence and resulting damage on the part of Otis company, responded to by Oil Exchange Building, and the judgments became conclusive on Otis company, except as to its rights to establish the fact that the negligence which caused the accident was the active or primary negligence of Oil Exchange Building. Otis company cannot escape liability on the theory of mutual negligence as between it and the Oil Exchange Building, by the claim of failure on the part of Oil Exchange Building to inspect the elevator, for the reason that such failure would have resulted in no damage, without a primary cause, which was established by competent evidence as the negligence of Otis company in failing to install the hoisting cables in a careful manner. The rule that relieves one joint tort-feasor from contribution to the other is applied where the tort-feasors acted in concert in committing the negligence or wrongful act. The contrary was the case here. Oil Exchange Building contracted with Otis company, which made it a special part of its regular business to install, inspect and repair elevators, to take exclusive charge of this job twice each month. Otis company undertook this employment well knowing the public interest involved, and by implication, warranted that it would discharge its contracted obligation in a careful manner. It managed the installation and had control and supervision over all help in connection therewith. That it did not install the hoisting cables properly, or did so carelessly and negli-

gently, is apparent from the resulting accident. It is not shown that any act of the Oil Exchange Building or its employees, not under the direction and control of Otis company, in any way contributed to the accident. By the pleadings, the evidence, and the arguments, all causes of the accident are eliminated save two, the pulling out of the cables from the cone or thimble which was fitted into the cross bar on the top of the elevator cage, and the failure of the safety device to stop the elevator in its fall. It was alleged and substantially proven that Otis company —which had charge of the installation of the cables— about six months prior to the accident, carelessly and negligently failed to make thoroughly amalgamated, fused or solidified anchors on the ends of the cables, and this neglect caused them to pull out. The safety device did not stop the fall, and it is undisputed as to whether it could under the circumstances.

██ Oil Exchange Building owed a duty to the public, in the operation of its elevator, to have the elevator in a reasonably safe condition for use. When it operated it, in what proved to be an unsafe condition, and injury resulted to its passengers, it was required to respond in damage, which it did through its insurer. As between Oil Exchange Building and Otis company, under the contract of employment with its implied warranties, Oil Exchange Building had the right to recover from Otis company for its negligence as the primary cause of the accident, and the damage having been settled by its insurer, casualty company, the latter, under its insurance contract, was subrogated to the rights of Oil Exchange Building.

██ These conclusions carry a determination of all questions necessary for the decision in this case, and other points raised will not be discussed, except the claim that improper items were included in the judgment. The amounts shown to have been expended by casualty company in defense of these suits, and settlement of these judgments, is a liquidated claim. ''Where a person is

obliged to defend against the act of another, against whom he has a remedy over, he may, if such other has notice of the suit and an opportunity to defend, hold him liable for the amount of damages recovered against himself and which he is compelled to pay, together with interest thereon." 31 C. J. 451, §50.

If Otis company did not try to prevent Oil Exchange Building from having to pay, when it had notice to pay or defend, then it cannot be heard to complain, when called upon to make its victim whole, so far as all money paid out by casualty company for Otis company is concerned.

Judgment affirmed.

MR. JUSTICE HILLIARD, concurring.

I concur generally, but am not convinced that sums claimed to have been expended by the casualty company in counsel fees, and the like, have been proved or are proper.

MR. CHIEF JUSTICE ADAMS and MR. JUSTICE CAMPBELL not participating.

### On Petition for Rehearing

PER CURIAM.

The item of interest should be eliminated from the judgment. Mr. Justice Burke and Mr. Justice Holland dissent, and Mr. Chief Justice Adams and Mr. Justice Campbell do not participate. Mr. Justice Hilliard and Mr. Justice Bouck dissent from the allowance of attorney's fees. With modification of the opinion to the effect indicated, the petition for rehearing is denied.