517 P.2d 406 (1973)
Mary Jo BRADFORD and Hartford Accident and Indemnity Company, Plaintiffs-Appellees,
v.
BENDIX-WESTINGHOUSE AUTOMOTIVE AIR BRAKE COMPANY, a corporation, Defendant-Appellant,
v.
CHRISTENSEN BROTHERS TRUCKING AND EXCAVATING COMPANY, Third-Party Defendant-Appellee.
No. 72-395.
Colorado Court of Appeals, Div. I.
October 24, 1973.
As Modified on Denial of Rehearing November 20, 1973.
Certiorari Denied January 14, 1974.
*408 Alperstein, Plaut & Barnes, Frank Plaut, Lakewood, for plaintiffs-appellees.
Weller, Friedrich, Hickisch & Hazlitt, William H. Hazlitt, Thomas H. Barrows, Denver, for defendant-appellant.
Wood, Ris & Hames, Eugene S. Hames, Denver, for third-party defendant-appellee.
Selected for Official Publication.
*409 PIERCE, Judge.
This is a products liability case involving a claim against Bendix-Westinghouse Automotive Air Brake Co. (Bendix) arising out of the failure of a brake pedal assembly produced by it. The assembly was installed as original equipment in a 1955 Mack Truck which was owned and operated by the third-party defendant, Christensen Brothers Trucking and Excavating Company (Christensen), from the time it was purchased until it was involved in an accident in 1969 as a result of which plaintiff Mary Jo Bradford incurred bodily injuries.
Initially, plaintiff Bradford and her insurance carrier sued both Bendix and Christensen. Following negotiations between Christensen and the plaintiffs, Christensen was dismissed from the suit. Thereafter, Bendix joined Christensen as a third-party defendant claiming indemnification from Christensen for the amount of any judgment which might be rendered against Bendix.
The complaint alleged claims for relief based on two theories of recovery: Bendix's negligence "in its design, manufacture, sale and servicing" of the brake pedal assembly, and the theory of strict liability in tort. The trial court submitted the case to a jury with instructions on both theories after dismissing the third-party complaint for failure to state a proper claim for relief. Judgment was entered on a verdict in favor of plaintiffs, and Bendix brings this appeal on several grounds.
The accident occurred when the Christensen dump truck lost its air brake power while descending an incline on a Denver street. The truck then struck several automobiles, including one which plaintiff Bradford was driving. The evidence is not in dispute that the base of the brake pedal assembly had broken causing the brake pedal to become disconnected from the base and rendering it completely inoperative. The efforts of the truck driver to apply the emergency brake were unsuccessful in stopping the truck before impact. The evidence further establishes that it was necessary for a combination of mechanical failures in the brake pedal assembly to occur before the brake pedal could become disconnected from its base and therefore become inoperative. The assembly consisted of four basic parts: The assembly base, the brake pedal, the fulcrum pin, which held the brake pedal to the assembly base, and the cotter key which anchored the fulcrum pin by means of holes drilled through the left ear of the assembly base and the fulcrum pin. (See figure 1).

*410 The plaintiffs' theory of the case was that at the time of the accident the cotter key anchoring the fulcrum pin had come out of the assembly allowing the fulcrum pin to shift to the right so that it was no longer engaged in the left ear of the assembly base. (See figure 2). This situation resulted in unusual leverage exerted in the right ear of the assembly base with each application of the brake pedal. There was also testimony that the metal in the right ear of the assembly base contained a defect known as a "cold-shut", a spot in the metal which did not properly fuse when the pedal base was cast. Apparently, at the time of the accident, the driver applied the brakes several times attempting to slow the speed of the vehicle and the right ear of the assembly base fractured, (see figure 3), permitting the fulcrum pin to become totally disengaged from the assembly base and making it impossible thereafter for him to apply the air brakes. The expert testimony presented was conflicting as to the adequacy of the design of the brake pedal assembly, particularly with regard to the sufficiency of the cotter pin device used to anchor the fulcrum pin, and also as to the severity of the alleged "cold-shut" imperfection and its causal *411 connection to the breakdown of the assembly.
STRICT LIABILITY
The paramount issue presented concerns the availability and application of the doctrine of strict liability under Colorado law. While we have acknowledged the availability of this doctrine under the law of this state and have given it tacit approval, see Ford Motor v. Conrardy, 29 Colo.App. 577, 488 P.2d 219, and Wright v. Creative Corp., 30 Colo.App. 575, 498 P.2d 1179, we have not heretofore delineated its principles and applied them to a specific fact situation.
While Bendix maintains that Wright v. Creative Corp., supra, is authority for the rejection of strict liability, we were careful there to point out that "there are important differences between strict liability as applied to manufactured products and as applied to building construction situations." Thus, contrary to Bendix's suggestion, that case suggests an implicit approval of the doctrine of strict liability with regard to cases involving manufactured products.
We find the doctrine correctly defined in Restatement (Second) of Torts § 402A, which provides:
"(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if
(a) the seller is engaged in the business of selling such a product, and
(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.
(2) The rule stated in Subsection (1) applies although
(a) the seller has exercised all possible care in the preparation and sale of his product, and
(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller."
Under this formulation, a plaintiff must show that the product in question was sold in a defective condition unreasonably dangerous to the user; that the injury to the ultimate user was caused by the defective condition; and that the product reached the user without substantial changes in the condition in which it was sold.

PRIVITY
Assuming the elements stated in 402A are established, the only bar to application of the strict liability in tort in this case would be the lack of privity of contract between Bradford and Bendix. While the Restatement, as presently drafted, extends only to the "ultimate user or consumer," the drafters have stated a caveat as to whether it should be extended to others within the zone of injury. See Restatement (Second) of Torts § 402A, Comment Caveat (1). Furthermore, we have not discovered any Colorado cases requiring privity of contract in the products liability context, whether the theory asserted be negligence, implied warranty, or strict liability. While two early federal cases, speculating as to what the law of Colorado might be, imposed the privity requirement in pre-Uniform Commercial Code warranty cases, see White v. Rose, 241 F.2d 94 (10th Cir. 1957), Senter v. B. F. Goodrich Co., 127 F.Supp. 705 (D.Colo.1954), the only Colorado cases which have imposed the privity requirements were cases dealing with implied warranties of merchantability by builder-vendors of newly constructed buildings. See Bolas Enterprises v. Zarlengo, 156 Colo. 530, 400 P.2d 447 and Wright v. Creative Corp., supra. In other cases where the privity argument has been raised, the policy has been to exclude the requirement from that particular type of transaction, e. g., Gonzales v. Safeway Stores, Inc., 147 Colo. 358, 363 P.2d 667. Therefore, in the absence of controlling Colorado authority to the contrary, we hold that, in a products liability case, privity *412 of contract is not a prerequisite to recovery under the strict liability theory. For authority from other jurisdictions in accord with this ruling, see Caruth v. Mariani, 11 Ariz.App. 188, 463 P.2d 83; Elmore v. American Motors Corp., 70 Cal.2d 578, 75 Cal.Rptr. 652, 451 P.2d 84; Piercefield v. Remington Arms Co., 375 Mich. 85, 133 N.W.2d 129; Comment, Strict Products Liability to the Bystander: A Study in Common Law Determinism, 38 U.Chi. L.Rev. 625, passim.

DEFECTIVE CONDITION
Bendix further argues that even if strict liability under Section 402A is applicable, the facts before us do not establish the first element which is, a "defective condition unreasonably dangerous to the user." While a single all-inclusive definition of this phrase of Section 402A has not been formulated (see Traynor, The Ways and Meanings of Defective Products and Strict Liability, 32 Tenn.L.Rev. 363), the word "defective" in that phrase does encompass imperfections in manufacture such as the "cold-shut" in this case. See Lunt v. Brady Mfg. Co., 13 Ariz.App. 305, 475 P.2d 964. It has also been established that a defect in manufacture consisting of the use of a material which may not be safely used for the purpose intended is also within the purview of § 402A, Fanning v. Lemay, 78 Ill.App.2d 166, 222 N.E.2d 815, and that a properly manufactured product is defective if its design is unreasonably dangerous. Pike v. Frank G. Hough Co., 2 Cal.3d 465, 85 Cal.Rptr. 629, 467 P.2d 229; Berkebile v. Brantly Helicopter Corp., 219 Pa.Super. 479, 281 A.2d 707. See generally W. Prosser, Law of Torts § 99 (4th ed.). From the record before us, a jury could reasonably have concluded that the brake pedal assembly contained a defect of any one or all three of the kinds of defects mentioned in this paragraph.
Bendix also argues that even if the assembly contained a "defect" within the meaning of Section 402A, such defect was not "unreasonably dangerous." However, as Comment i accompanying Section 402A points out, this language only recognizes that some products "cannot possibly be made entirely safe for all consumption." The drafters of Section 402A illustrate this point by observing that unadulterated tobacco is not unreasonably dangerous merely because the effects of smoking may be harmful. See Traynor, supra, at 370. The present case does not deal with that type of product. A defect in a brake pedal assembly which causes the braking system to fail is unreasonably dangerous because it is certain that such a defect would "jeopardize the life and bodily security of any person who uses the car or who was in the vicinity of its use . . . ." Markel v. Spencer, 5 A.D.2d 400, 171 N.Y.S.2d 770. Under these circumstances, it would not have been unreasonable for the jury to have concluded that the brake pedal mechanism reached the user in "a defective condition unreasonably dangerous to the user."
Bendix next argues that Section 402A(1)(b) precludes recovery on the strict liability theory in this case because the brake pedal assembly had apparently lost the cotter key anchoring the fulcrum pin through no fault on the part of Bendix and that this loss was a "substantial change in the condition" of the assembly from the time of the original sale. This argument fails, however, because the brake pedal assembly reached the user initially in exactly the same condition in which it was sold. Allegations of activities which altered the condition of the product after delivery to the user present problems of proximate causation, and are not the problem addressed by Section 402A(1)(b). Dennis v. Ford Motor Co., 3 Cir., 471 F.2d 733.
The real thrust of Bendix's argument, therefore, is that the acts of the owner of the truck which apparently permitted the cotter pin to become dislodged, constitute an "intervening cause" which should relieve Bendix from strict liability. They cite Section 402A which recognizes that strict liability is not applicable where *413 the product is delivered in safe condition but becomes dangerous due to subsequent mishandling before consumption or use. Section 402A, Comment g.
The argument presented by Bendix in terms of "intervening cause" is essentially the adaption of a negligence concept into the theory of strict liability. The argument attempts to inject an element of foreseeability into the definition of "unreasonably dangerous" defect by suggesting that Bendix could not reasonably foresee conduct on the part of the owner of the truck in this case which may have contributed to the accident. However, this argument is not applicable when discussing strict liability theory. Under strict liability, the focus is not on the conduct of the defendant, but rather, on the product itself and the consumer's expectations with regard to that product. Section 402A applies even where "the seller has exercised all possible care in the preparation and sale of his product. . .." Section 402A(2)(a). See Lunt v. Brady Mfg. Co., supra. Comment i of Section 402A states that a product is "unreasonably dangerous" if it is dangerous "to an extent beyond that which would be contemplated by the ordinary consumer who purchases it . . .." Therefore, "an unreasonably dangerous defect" under Section 402A which is a proximate cause of a plaintiff's injuries may result in the imposition of strict liability, even where an intervening cause might not have been "foreseeable" by the defendant.
Section 402A does recognize a defense for the manufacturer where the consumer or user mishandles or misuses the product and thereby creates the dangerous condition. Primarily, this defense is intended to protect the manufacturer from becoming an absolute insurer for all injuries arising out of the use of his product. The usual situation in which the defense will arise is where the product is being used in a way in which it was not intended to be used. However, a prerequisite for the defense is that the product must have been in a safe condition when it reached the user. If it was unreasonably dangerous at that time, the "intervening" acts of the user can only be additional proximate causes making the two parties joint tortfeasors. See discussion of third-party complaint infra.
Of course, the defect in the product must itself be a proximate cause of the plaintiffs' injury before the plaintiff can recover. The manufacturer could not be held liable simply because of the existence of the defect when the real cause of the accident was the conduct of the user of the product. Only in this sense can the manufacturer be relieved of liability due to the acts of the user or a third party.
There was sufficient evidence in the record to submit to the jury the question of whether or not the design of the brake pedal assembly was unreasonably dangerous when sold by Bendix, within the meaning of Section 402A, and the acts of Christensen in its maintenance of the vehicle cannot be asserted as an intervening cause which would defeat plaintiffs' strict liability in tort claim.
In addition, Bendix suggests that it was not responsible for the "cold-shut" in the pedal base since it did not manufacture that portion of the assembly. This argument, likewise, misconceives the nature of the strict liability theory. See generally, Greenman v. Yuba Power Products, Inc., supra; Brandenburger v. Toyota, Mont., 513 P.2d 268; and Prosser, The Assault Upon the Citadel (Strict Liability to the Consumer), 69 Yale L.J. 1099. As Justice Traynor pointed out in Vandermark v. Ford Motor Co., 61 Cal.2d 256, 261, 37 Cal.Rptr. 896, 898, 391 P.2d 168:
"Since the liability is strict it encompasses defects regardless of their source, and therefore a manufacturer of a completed product cannot escape liability by tracing the defect to a component part supplied by another. (Goldberg v. Kollsman Instrument Corp., 12 N.Y.2d 432, 240 N.Y.S. 2d 592, 191 N.E.2d 81.)"
*414 It was proper under the circumstances in this case to submit the issues involved in strict liability to the jury.

NEGLIGENCE
The complaint also alleges that Bendix was negligent "in its design, manufacture, sale, and servicing of the said brake pedal, brake pedal base and brake pedal assembly." Plaintiffs offered evidence on several points concerning the various parts to the assembly base, the failure of Bendix to inspect the brake pedal base for flaws such as the "cold-shut," and the failure of Bendix in designing the assembly to insure that the fulcrum pin could not become disengaged. A manufacturer has the duty of care to design his product so that it will be safe for the use for which it was intended. Pike v. Frank G. Hough Co., supra. From the evidence presented, the jury reasonably could have concluded that the conduct of the defendant constituted negligence in the design and sale of the entire assembly. The verdict based on this evidence, when viewed most favorably to the prevailing party, will not be disturbed on appeal. Chartier v. Winslow Crane Service Co., 142 Colo. 294, 350 P.2d 1044; Klockner v. Keser, 29 Colo.App. 476, 488 P.2d 1135.
Bendix suggests that the fact that this assembly had provided uneventful service since 1955 would foreclose submission of this case to a jury on the negligence issue. While this evidence may be relevant, it is not determinative, and the determination of the weight to be accorded to this evidence is left to the trier of fact. Carpini v. Pittsburg and Weirton Bus Co., 3 Cir., 216 F.2d 404. See also Pryor v. Lee C. Moore Corp., 10 Cir., 262 F.2d 673.
In addition, however, Bendix argues with respect to the negligence theory that the evidence was insufficient to establish its conduct as a proximate cause of Bradford's injuries. Bendix stresses the fact that at the time of the accident, the brake pedal assembly was apparently in a state of disrepair since the cotter key anchoring the fulcrum pin had become dislodged. It is again Bendix's position that it was not responsible for this state of disassembly and therefore its liability under any negligence theory is interrupted by an intervening cause. However, such an intervening cause only relieves a defendant of liability where the intervening cause was not reasonably foreseeable. That question itself is one for the jury even if the evidence might show, as a matter of law, that the operator or owner of the truck had been negligent in permitting the cotter key to become disengaged. Brooks v. Allis-Chalmers Mfg. Co., 163 Cal.App.2d 410, 329 P.2d 575. Reasonably foreseeable intervening causes must be viewed as within the scope of the original risk created by a defendant's negligence, if any, even to the extent of the foreseeable negligence on the part of third parties. Chartier v. Winslow Crane Service Co., supra; W. Prosser, Law of Torts § 44 (4th Ed.). The foreseeable misuse of the product by the purchaser is within the scope of that risk. Byrnes v. Economic Machinery Co., 41 Mich.App. 192, 200 N.W.2d 104. The element of foreseeability of an intervening cause is an inherent part of an allegation of negligent design. Such an allegation urges that a defendant negligently failed to design the product against reasonably foreseeable conditions, whether natural or man-created. See Byrnes v. Economic Machinery Co., supra.
The evidence in this action was sufficient to submit to the jury the issue of Bendix's negligence and the possible intervening negligence of the owner and operator of the truck.

THIRD-PARTY CLAIM
Bendix also contends that the trial court erred in dismissing the third-party complaint against Christensen. This complaint was based on a theory of indemnity grounded on a claim that Christensen's conduct was "the sole proximate cause" of Bradford's injury. Bendix argues that at the least the jury should have been permitted *415 to determine whether or not any negligence on the part of Christensen would be sufficient to relieve Bendix of liability. In asserting this third-party claim, Bendix relies primarily on Jacobson v. Dahlberg, 171 Colo. 42, 464 P.2d 298. In that case, the defendant negligently discharged a shotgun which killed the plaintiff's dog. The defendant sued the seller of the gun in a third-party complaint alleging a breach of warranty due to a defect in the gun. That case is distinguishable from the case at hand since, there, the basis of the third-party claim was a duty owing directly from the third-party defendant to the third-party plaintiff. While our Supreme Court did suggest that the third-party claim in Dahlberg turned on whether or not the defect in the gun was "the primary cause of the injury" we believe that the case must be read within the context in which it arose. The defendant in that case was entitled to indemnification from the third-party defendant upon a showing of a breach of warranty on the part of the third-party defendant to the third-party plaintiff, which breach could be shown to be the primary cause of the injury. However, the indemnification claim assumes the breach of a duty owed by the third-party defendant directly to the third-party plaintiff. In the case before us, Christensen owed no duty to Bendix to maintain the brake pedal assembly properly. Rather, Christensen's duty was to the plaintiffs.
The rule in Colorado is well established that where two or more persons are negligent and their combined negligence causes injury to a third party, the third party may sue either or both of the wrongdoers. Furthermore, under these circumstances, there is no right to contribution as between joint tortfeasors. Colorado and Southern Railway Co. v. Western Light & Power Co., 73 Colo. 107, 214 P. 30.
The distinction between primary and secondary liability, upon which the indemnity claim depends, is not based on a difference in the degree of negligence or any doctrine of comparative negligence, as is suggested by Bendix. Rather, as stated in Builders Supply Co. v. McCabe, 366 Pa. 322, 77 A.2d 368:
"It depends on a difference in the character or kind of the wrongs which cause the injury and in the nature of the legal obligation owed by each of the wrongdoers to the injured person." (Emphasis in original)
Thus, the seller of an item may be held liable for breach of warranty without fault on his part because of a defect in a product which he sold but for which the manufacturer of the product must take responsibility. See Sweeney Co. v. McQuay-Norris, 30 Colo.App. 134, 489 P.2d 356. In the case before us, both Christensen and Bendix owed a duty to Bradford to refrain from conduct which could foreseeably result in her injury. Neither of these duties are in any sense vicarious with respect to Bradford. Nor did Christensen have any duty running to Bendix in this case similar to that owed by a manufacturer under a warranty theory to an assembler further up the production line, as might be the case if the positions of Christensen and Bendix were reversed.

INSTRUCTIONS
Finally, Bendix argues that various instructions given by the court were improper and further that the court erred in failing to give instructions tendered by it with respect to Christensen's standard of care and with respect to a substantial change in the condition of the product. While several of their objections to instructions given by the trial court were not raised below, we have examined each objection and find them to be without merit.
Bendix alleges specifically that the two instructions by the court with respect to the negligence claim were repetitive and gave undue emphasis to this theory of plaintiff's case. We note that the first instruction given was a very general statement of the law of negligence, while the second was a more specific statement *416 relating the facts of this case to the applicable law. We find no prejudicial error in the giving of these instructions. See Liutz v. Denver City Tramway Co., 54 Colo. 371, 131 P. 258. Bendix's objection that these instructions failed to include intervening cause is without merit since the instruction on proximate cause covered it sufficiently.
Bendix further argues that the court erred in failing to include in the instruction on strict liability the need for a showing of proximate cause on that theory as well. Any error by the trial court with respect to this omission was cured by a later instruction which permitted the jury to assess damages, under either theory of liability, only "insofar as they were proximately caused by defendant." The jury was then instructed that all of the instructions must be read and considered together. See Niccoli v. Ayala, Colo.App., 501 P.2d 138. Bendix's objection to the instruction on the strict liability theory on the grounds that strict liability is not the law in Colorado has already been covered in this opinion.
Similarly, the arguments with respect to tendered instructions relating to the standard of care required of Christensen in the operation of the truck and the "exculpating" effect of Christensen's conduct in maintaining the truck are without merit in view of our conclusion, supra, that Christensen's conduct was not a basis for an indemnity claim in favor of Bendix. Plaintiffs' action against Christensen had been dismissed so that Christensen's possible negligence was not in issue in this case. Denial of Bendix's requested instruction on the "foreseeability" of Bradford's injury from the alleged negligence of Bendix was also properly refused in view of our conclusion, supra, that the consequences of a brake mechanism failure are foreseeable, as a matter of law. Markel v. Spencer, supra.
Judgment affirmed.
COYTE and ENOCH, JJ., concur.