**WESTERN INSURANCE COMPANY, a Kansas Corporation, and The Community Hospital Association, a Colorado Corporation, Plaintiffs-Appellees,**

v.

**Ruben BROCHNER, Defendant-Appellant.**

**No. 82CA1492.**

Colorado Court of Appeals, Div. III.

Dec. 29, 1983.

Rehearing Denied Feb. 2, 1984.

Certiorari Granted June 11, 1984.

1214

Cooper & Kelley, P.C., Paul D. Cooper, Kim B. Childs, Denver, for plaintiffs-appellees.

Stevens & Littman, P.C., Andrew C. Littman, Boulder, for defendant-appellant.

KELLY, Judge.

This case arose out of a medical malpractice claim brought by a patient, one Cortez, against defendant, Dr. Brochner, for performing an unnecessary craniotomy in 1968, and against plaintiff Community Hospital Association, for negligently supervising Brochner's diagnosis despite being aware of his propensity for performing unnecessary craniotomies. Both the hospital and Brochner made separate out-of-court settlements with Cortez in return for covenants not to sue. Plaintiff Western Insurance Company, as the hospital's insurer, became subrogated to the hospital's rights and joined the hospital in bringing this action against Brochner seeking indemnity for the amount paid to Cortez.

The trial court found that plaintiffs were entitled to indemnity and awarded the insurance company $150,000, the sum paid to Cortez in settlement, and $41,574.19 for legal fees and costs incurred in defending the action brought against the hospital by Cortez, and awarded the hospital $10,000 for expenses not reimbursed by the insurance company.

Brochner appeals, arguing (1) that indemnity is precluded since there was no pre-existing duty owed by him to the hospital to protect the hospital from liability, and that the proper remedy is contribution rather than indemnity, (2) that the evidence establishing his duty to the hospital to obtain consultations before performing craniotomies was improperly admitted hearsay, and (3) that the award of legal fees and costs to the insurance company was erroneous. We affirm.

Brochner applied for, and was granted, staff privileges at the hospital in 1964, at which time he signed an agreement stating that:

> "In making application for appointment to the medical staff of this hospital I agree to abide by its bylaws and by such rules and regulations as it may from time to time enact."

Over the next two years the hospital became aware that an inordinate number of craniotomies were being performed by Brochner on patients whose brain tissue samples indicated no need for such procedures.

Because of this high incidence of unnecessary craniotomies, the hospital's executive committee met with Brochner in 1965 and orally instructed him to "have a consultation on all craniotomies where there was not clearcut radiographic evidence of pathology." Then, in 1966, the executive committee made a written "recommendation" to Brochner that he have "outside consultation on surgical pathological specimens as well as the possibility of obtaining additional interpretation of X-ray studies."

## I.

Brochner argues that he should not be liable to the hospital for indemnity since he owed no pre-existing duty of care to the hospital enabling it to seek indemnity for his negligent acts. He asserts that a hospital is generally not liable for the negligence of a doctor who has been granted staff privileges, and that since the hospital could not have been held liable for his negligence, no duty could inhere in him. He contends that in the absence of a pre-existing duty the hospital's action should properly be for contribution rather than indemnity.

In extending staff privileges to a doctor, a hospital does not generally expose itself to liability for the doctor's negligence unless it knows or should know of a propensity on the doctor's part to commit negligent acts. *Moon v. Mercy Hospital*, 150 Colo. 430, 373 P.2d 944 (1962). In this case, however, the hospital's executive committee was aware of the fact that Brochner was performing unnecessary craniotomies.

The hospital's potential liability, therefore, was not based on Brochner's negligence, but rather on its own negligence in failing properly to supervise Brochner's known proclivity for performing unnecessary craniotomies.

### A.

At common law, contribution, the distribution of liability among joint tortfeasors based on each tortfeasor's proportionate share of wrongdoing, was not permitted. Colorado's abrogation of this rule was codified by the adoption of the Uniform Contribution Among Tortfeasors Act, § 13–50.5–101, et seq., C.R.S.1973 (1982 Cum.Supp.). Under the Act, each joint tortfeasor is liable for his pro rata share of the loss, and where one tortfeasor has paid, either through settlement or judgment, in excess of his pro rata share, he has a right of contribution against the other tortfeasors. Section 13–50.5–102, C.R.S.1973 (1982 Cum. Supp.).

■ Indemnity, on the other hand, shifts the entire loss from one tortfeasor who has been compelled to pay it to the shoulders of another who should bear it instead. *W. Prosser, Torts* § 51 (4th ed. 1971). While these theories are often confused, they are distinct theories of recovery among joint tortfeasors. Each theory is mutually exclusive of the other. *See Restatement (Second) of Torts* § 886A comment L.

■ Brochner contends that by adoption of the comparative negligence standard and the Uniform Contribution Among Tortfeasors Act, the General Assembly has repudiated the concept of indemnity. We disagree. The Uniform Contribution Among Tortfeasors Act expressly excludes from its coverage the traditional rules of indemnity. Section 13–50.5–102(6), C.R.S. 1973 (1982 Cum.Supp.) states:

"This article does not impair any right or indemnity under existing law. Where one tortfeasor is entitled to indemnity from another, the right of the indemnity obligee is for indemnity and not contribution, and the indemnity obligor is not entitled to contribution from the obligee for any portion of his indemnity obligation."

*Public Service Co. v. District Court*, 638 P.2d 772 (Colo.1981). Thus, the General Assembly has manifested its intention not to disturb the common law principles of indemnity. Had its intention been otherwise, § 13–50.5–102(6) would have been omitted, and the General Assembly would have expressly merged indemnity into the statutory contribution scheme.

Moreover, adoption of comparative negligence did not abrogate the rules of indemnity. *Bradford v. Bendix-Westinghouse Automotive Air Brake Co.*, 33 Colo.App. 99, 517 P.2d 406 (1973). We therefore decline Brochner's invitation to merge the contribution and indemnity theories.

■ In the present case, contribution would not be the appropriate means of distributing the loss among the joint tortfeasors. Under the Uniform Contribution Among Tortfeasors Act, obtaining a release or covenant not to sue from a claimant insulates that tortfeasor from contribution to other tortfeasors. Section 13–50.5–105, C.R.S.1973 (1982 Cum.Supp.) states:

"(1) When a release or a covenant not to sue or not to enforce judgment is given in good faith to one of two or more persons liable in tort for the same injury or the same wrongful death:

. . . .

(b) It discharges the tortfeasor to whom it is given from all liability for contribution to any other tortfeasor."

*See Kussman v. City & County of Denver*, 671 P.2d 1000 (Colo.App.1983) (*cert. granted* October 31, 1983). Since both the hospital and the doctor settled with Cortez in return for covenants not to sue, each is precluded from seeking contribution from the other.

### B.

■ An action for indemnity has generally been held to lie where "[t]he indemnitor was under a duty to the indemnitee to

protect him against the liability to the third person." *Restatement (Second) of Torts* § 886B(f). Indemnification between tortfeasors is allowed in Colorado only when there is a pre-existing duty upon one of the tortfeasors to hold the other harmless for the injuries. *Public Service Co. v. District Court, supra; Ringsby Truck Lines, Inc. v. Bradfield,* 193 Colo. 151, 563 P.2d 939 (1977). In *Ringsby,* the Colorado Supreme Court stated that:

"For one tortfeasor to be in a position of secondary responsibility *vis-a-vis* another tortfeasor, and thus to be entitled to indemnification, there must have been some preexisting legal relation between them or some duty on the part of the primary tortfeasor to protect the secondary tortfeasor.

. . . .

The notion that indemnification must be based on some legal relationship or duty imposed by statutory or common law, has long been implicit in the 'primary tortfeasor' requirement of our case law."

*See also Jacobson v. Dahlberg,* 171 Colo. 42, 464 P.2d 298 (1970); *Otis Elevator Co. v. Maryland Casualty Co.,* 95 Colo. 99, 33 P.2d 974 (1934); *Bradford v. Bendix-Westinghouse Automotive Air Brake Co., supra.*

■ In addition to the requirement that there be a pre-existing duty on the part of the indemnitor, Colorado law also requires that the indemnitee be only secondarily responsible for the injury relative to the primary negligence of the indemnitor. *Bradford v. Bendix-Westinghouse Automotive Air Brake Co., supra; Ringsby Truck Lines, Inc. v. Bradfield, supra.* In *Bradford,* this court explicated the distinction between primary and secondary liability, and noted that, rather than relying on a difference in the degree of negligence or on the doctrine of comparative negligence, the distinction " 'depends on a difference in the *character* and *kind* of the wrongs which caused the injury and the nature of the legal obligation owed by each of the wrongdoers to the injured person' (emphasis in

original)." Thus, in order for one tortfeasor to recover indemnification from another tortfeasor, the indemnitor must owe a pre-existing duty to the indemnitee and his negligence must have been primary relative to the negligence of the indemnitee.

Brochner argues that he owed no pre-existing duty to the hospital on which a claim for indemnity may be based. We disagree.

■ The trial court found that Brochner had agreed to abide by the bylaws, rules, and regulations of the hospital and that one of the rules which he was bound to honor was the one imposed on him by the executive committee to have a consultation on all craniotomies where there was no clearcut radiographic evidence of pathology. We agree with the trial court that because of Brochner's promise to abide by the hospital's rules he was under an obligation to comply with the order requiring consultation. The basis for this rule was to protect the hospital from exactly the kind of liability to which it was exposed in this case, and in performing craniotomies without seeking consultation, Brochner acted in derogation of the hospital's rule pertaining to him, and thereby breached his duty to protect the hospital from this sort of liability.

The trial court also found that Brochner's negligence was primary based on the aggregation of several factors. These included the fact that Brochner's act was one of commission whereas the hospital's act was one of omission; Brochner's negligence was more proximate in time to the injury; Brochner's act was sufficient in itself to cause the injury whereas the hospital's acts alone could not have caused the injury; and that Brochner's negligence was greater quantitatively. We agree that these factors are all indicia that Brochner's act was different in "character and kind" from the hospital's failure to supervise.

II.

■ Brochner argues that a hospital memorandum, the document which established that he was aware of the existence

of a rule requiring consultation, was hearsay and therefore inadmissible. We disagree.

The memorandum was addressed from Dr. MacFarland, the president of the medical staff, to the hospital's executive committee on December 12, 1968, and referred to a discussion he had had with Brochner two days earlier. In the memorandum, MacFarland reports Brochner's stated awareness of the existence of a rule, effective in 1965, requiring consultation on all craniotomies except where clearcut radiographic evidence of pathology was present. Over a hearsay objection, the trial court held that the memorandum was not hearsay since it was an admission by a party-opponent under CRE 801(d)(2). The trial court found further that under CRE 803(6) concerning records of regularly conducted activity, it was an exception to the rule against hearsay.

We agree that the memorandum was an admission by a party-opponent and, therefore, not hearsay. Consequently, we need not rule on whether the hearsay exception contained in CRE 803(6) is applicable.

Brochner argues that it is unclear from the memorandum whether the conversation reported was between Brochner and MacFarland or Brochner and another party who in turn reported the conversation to MacFarland. He points out that in the latter case the memorandum would be double hearsay and, therefore, inadmissible. This argument is without merit since the letter attached to the memorandum, together constituting plaintiff's exhibit 6, is written by MacFarland and addressed to Brochner, and states at its outset: "This is a letter to confirm our conversation of 10 Dec 68." Thus, the trial court correctly found that Brochner's statement to MacFarland, commemorated in the memorandum to the executive committee, was an admission, and therefore not hearsay.

### III.

Finally, Brochner argues that the trial court erred in awarding legal fees and costs to the insurance company. We disagree.

 While the general rule is that attorney's fees and costs are not properly awarded in the absence of an express statutory or contractual provision, *Beebe v. Pierce*, 185 Colo. 34, 521 P.2d 1263 (1974), attorney's fees are proper when an action is brought against one party because of the tort of another. The *Restatement (Second) of Torts* § 914(2) states:

> "One who through the tort of another has been required to act in the protection of his interests by bringing or defending an action against a third person is entitled to recover reasonable compensation for loss of time, attorney fees and other expenditures thereby suffered or incurred in the earlier action."

*See also Sun Indemnity Co. v. Landis*, 119 Colo. 191, 201 P.2d 602 (1948); *International State Bank v. Trinidad Bean & Elevator Co.*, 79 Colo. 286, 245 P. 49 (1926); *McNeill v. Allen*, 35 Colo.App. 317, 534 P.2d 813 (1975).

 In this case, Brochner's negligence exposed the hospital and its insurance company to litigation brought by the victim of Brochner's negligence. Under these circumstances an award of attorney's fees is proper.

The judgment is affirmed.

BERMAN, J., concurs.

TURSI, J., dissents.

TURSI, Judge, dissenting.

I respectfully dissent.

In the underlying personal injury action against Dr. Brochner and the hospital, the patient sought recovery for damages sustained from the performance of unnecessary surgery. Dr. Brochner was sued for medical malpractice. The hospital was sued for failure to provide adequate procedures to insure that unnecessary surgery is not performed, and failure to maintain and enforce staff standards prescribed by its own rules.

After trial had commenced, the hospital, and then Dr. Brochner, independently negotiated and executed settlement and release agreements. Without admitting liability, the hospital settled for $150,000, which was paid by its insurance company. Although the record is not clear, it appears that Dr. Brochner settled, also without admitting liability, but at a substantially lesser amount.

Here, there is no contract of indemnity between Dr. Brochner and the hospital. There is no evidence of an indemnity provision in the hospital's by-laws or in the rules and regulations. Further, the trial court found there was no evidence establishing that Dr. Brochner was shown a copy of the by-laws.

Dr. Brochner and the hospital are ostensibly joint tortfeasors, each breaching independent duties owed to the patient. *See Moon v. Mercy Hospital*, 150 Colo. 430, 373 P.2d 944 (1962). The majority, relying on the doctrine set forth in *Ringsby Truck Lines, Inc. v. Bradfield*, 193 Colo. 151, 563 P.2d 939 (1977) and *Bradford v. Bendix-Westinghouse Automotive Air Brake Co.*, 33 Colo.App. 99, 517 P.2d 406 (1973), concludes that Dr. Brochner was under a pre-existing duty to hold the hospital harmless from liability for injuries he might cause, and since he was primarily responsible for the patient's damages, he must bear the burden of total responsibility. I disagree.

The majority oversimplifies the claim against the hospital as negligent supervision. Rather, the patient's pleadings alleged active negligence on the part of the hospital. Here, the trial court found the testimony in the personal injury suit to indicate that both Dr. Brochner and the hospital had breached independent legal duties owed to the patient. *See W. Prosser, Torts* § 51 (4th ed. 1971).

Each breach was a contributing cause of the patient's injuries, and each breach can sustain liability for the total damages suffered. Because of the hospital's omission in the performance of its duties, as alleged by the patient, it was foreseeable that the injury complained of could happen. In fact, had the hospital performed its duty, the injury might well have been avoided. Thus, patient's claim was one of concurrent negligence. Under this factual situation, where there is common liability, resulting from active negligence, the primary and secondary liability distinction is inappropriate. *See National Farmers Union Property & Casualty Co. v. Frackelton*, 662 P.2d 1056 (Colo.1983).

At common law, indemnity was limited to situations in which there is either an express contract for indemnity, or in which liability is imputed to a person who is not at fault. *See W. Prosser, supra* and *Highway Construction Co. v. Moses*, 483 F.2d 812 (8th Cir.1973). Contribution between joint tortfeasors was prohibited. *See Hamm v. Thompson*, 143 Colo. 298, 353 P.2d 73 (1960).

In order to circumvent the common law rule prohibiting contribution among joint-tortfeasors, courts extended indemnity to permit a tortfeasor, whose negligence was vicarious or passive, to shift total responsibility to the joint tortfeasor whose negligence actively caused the injury. *Ringsby, supra*. This overextension of the right to indemnity was motivated by the harshness of the no-contribution rule. *Laugesen, Colorado's Contribution Among Tortfeasor's Act*, 6 Colo.Law. 1485 (1977). Therefore, indemnification under *Ringsby* could, and often did, result in unjust windfalls to indemnitee tortfeasors.

The justification of the *Ringsby* doctrine was vitiated with the adoption of the Uniform Contribution Among Tortfeasors Act, § 13–50.5–101 et seq., C.R.S.1973 (1982 Cum.Supp.) (Act), which permits apportionment of liability among joint tortfeasors. *See* § 13–50.5–102(1), C.R.S.1973 (1982 Cum.Supp.). The all-or-nothing remedy in *Ringsby* is no longer necessary as the Act permits equitable allocation of responsibility based upon relative fault. *Restatement (Second) of Torts* § 886B comment f. *See Laugesen, supra*. Since the underlying rationale for the development of the active-passive negligence doctrine as set forth in *Ringsby* no longer exists, there is no just

reason for its perpetuation. Therefore, indemnity should be limited to traditional indemnification situations. *Hamm v. Thompson, supra. See* Uniform Contribution Among Tortfeasors Act § 1 comment (f), 12 U.L.A. 66 (1975).

I conclude that the factual situation here properly falls within the law of contribution, and not indemnity. Since the plaintiffs did not seek contribution, I would reverse the trial court's judgment and remand the matter for dismissal of plaintiffs' complaint.