**WILSON AND COMPANY, ENGINEERS AND ARCHITECTS, Plaintiff–Appellee and Cross–Appellant,**

v.

**WALSENBURG SAND AND GRAVEL COMPANY, INC., Defendant–Appellant and Cross–Appellee,**

v.

**FIDELITY AND DEPOSIT COMPANY OF MARYLAND, Defendant–Appellee and Cross–Appellee.**

No. 87CA1658.

Colorado Court of Appeals, Div. I.

July 27, 1989.

Rehearing Denied Aug. 31, 1989.

L. Douglas Beatty, Colorado Springs, for plaintiff-appellee and cross-appellant.

Ernest U. Sandoval, Walsenburg, for defendant-appellant and cross-appellee.

Weller, Friedrich, Ward & Andrew, Andrew J. Friedrich and Barry F. Benson, Denver, for defendant-appellee and cross-appellee.

TURSI, Judge.

Defendant Walsenburg Sand & Gravel Co., Inc., (WSG) appeals the sufficiency of the judgment entered on its counterclaim against the plaintiff, Wilson & Co. (Wilson). WSG also appeals the award of attorneys fees and expenses entered in favor of defendant Fidelity and Deposit Company of Maryland (Fidelity) on Fidelity's cross-claim against WSG. Wilson cross-appeals the dismissal of its claims against WSG and Fidelity. We affirm the judgment in its entirety.

The City of Walsenburg hired Wilson to perform engineering services in connection with its street improvement program. The construction contract for the project was awarded to WSG.

Under its construction contract with the City, WSG was required to pay an agreed sum to Wilson for engineering services. WSG included that amount, which Wilson and the City had previously agreed upon, in its bid price for the contract. The terms of the construction contract also required WSG, as principal, to execute a subcontractor's agreement with Wilson.

After the project was underway, the City terminated Wilson because of several delays and cost overruns. Wilson, which had already received partial payment from WSG, brought this action to collect the balance provided for in the subcontract. Fidelity was joined as a defendant because it had issued a labor and materials bond on behalf of WSG. WSG counterclaimed for breach of the subcontract, and Fidelity cross-claimed against WSG for attorney fees and costs pursuant to an indemnification agreement executed by WSG.

In a trial to the court, Wilson's claims were dismissed, and judgment was entered for WSG on its counterclaim. The trial court also awarded judgment to Fidelity on its cross-claim.

## I

WSG contends that the trial court erred in awarding attorney fees and costs to Fidelity. Specifically, WSG argues that Fidelity had no claim to the amount awarded under the indemnification agreement. WSG further asserts that even if Fidelity did have a legitimate claim to the award, the trial court, in derogation of its duty under C.R.C.P. 52, failed to make adequate findings of fact giving the basis for the amount awarded. However, our review of the record convinces us that the trial court committed no error in connection with the award to Fidelity.

■ The extent of a contractual duty to indemnify must be determined from the contract itself. Such contracts are con-strued to cover those losses or liabilities which reasonably appear to have been intended by the parties. *Superior Companies v. Kaiser Cement Corp.*, 152 Ariz. 575, 733 P.2d 1158 (1986).

The agreement of indemnity executed by WSG provided that:

"The Contractor and Indemnitors shall exonerate, indemnify, and keep indemnified the Surety from and against any and all liability for losses and/or expenses of whatsoever kind or nature (including, but not limited to, interest, court costs and counsel fees) and from and against any and all such losses and/or expenses which the Surety may sustain and incur: (1) By reason of having executed or procured the execution of the Bonds...."

It further provided that:

"Surety shall be entitled to charge for all ... [liabilities incurred] ... in good faith in and about the matters herein contemplated by this Agreement under the belief that it is or was liable for the sums and amounts so disbursed, or that it was necessary or expedient to make such disbursements, whether or not such liability, necessity or expediency existed...."

■ WSG argues that Fidelity's rights under the indemnity agreement did not accrue until WSG's liability to a third party was established. However, based on the plain meaning of the foregoing language, WSG assumed responsibility for Fidelity's attorney fees and litigation expenses as long as they were incurred in good faith. *See* 13 G. Couch, *Cyclopedia of Insurance Law* §§ 47:131 and 47:132 (M. Rhodes Rev. Vol.2d ed. 1982); *Central Towers Apartments, Inc. v. Martin*, 61 Tenn.App. 244, 453 S.W.2d 789 (1969). Because the record discloses no evidence that Fidelity acted in bad faith by defending the claim brought against it, we conclude that it was entitled to collect its attorney fees and costs.

In its findings of fact, the trial court set the amount of Fidelity's award based on an affidavit submitted by Fidelity's counsel. We find this basis adequate as the affidavit was not contested and there was sufficient evidence presented to support the amount claimed.

## II

WSG also argues that the damages awarded by the trial court on its counterclaim against Wilson were inadequate as a matter of law and fact. We disagree.

■ A party must present evidence of the amount of damage incurred in order to recover actual damages resulting from the breach of a contract. *Globe Drilling Co. v. Cramer,* 39 Colo.App. 153, 562 P.2d 762 (1977). Damages for loss of net profits may be recovered in a breach of contract action unless they are speculative, remote, imaginary, or impossible of ascertainment. *Denver Publishing Co. v. Kirk,* 729 P.2d 1004 (Colo.App.1986). The determination of those damages is within the sole province and sound discretion of the trier of fact. *See Hotchkiss v. Preble,* 33 Colo. App. 431, 521 P.2d 1278 (1974).

■ Here, many of WSG's claimed damages related to an alleged loss of rental revenue caused by idle equipment stemming from Wilson's delays. However, WSG presented no evidence that there were third parties ready and willing to rent the equipment had it been available. Therefore, we agree with the trial court that these damages were speculative and, thus, unrecoverable.

■ We further agree that WSG was not entitled to recover from Wilson the attorney fees it was required to pay to Fidelity. WSG's claim for these damages was based solely on Wilson's joining Fidelity as a party to this action despite WSG's statements that it was solvent and capable of satisfying any potential judgment. Although the trial court found that Wilson failed "to comport with the standards of good faith and fair dealing" in performance of the contract, that finding was not germane to WSG's claim for attorney fees as the claim for attorney fees was not predicated on Wilson's misconduct under the contract. Consequently, Wilson's refusal to accept WSG's assurance of solvency did not justify an award of reimbursement to WSG commensurate with the attorney fees award to Fidelity.

The trial court's award of damages is supported by the record, and thus, we uphold it. *See Page v. Clark,* 197 Colo. 306, 592 P.2d 792 (1979).

## III

■ On its cross-appeal, Wilson asserts that the evidence was insufficient to support the trial court's determination that it materially breached the subcontract. However, substantial evidence in the record supports the trial court's findings, and therefore, we affirm the judgment in favor of WSG. *Zuments v. Colorado High School Activities Ass'n,* 737 P.2d 1113 (Colo.App.1987).

Judgment affirmed.

HUME, J., concurs.

RULAND, J., dissents.

RULAND, Judge, dissenting.

I respectfully dissent from the majority opinion insofar as it does not award WSG the attorney fees it is obligated to pay Fidelity.

There is substantial authority in other jurisdictions for the proposition that if a party breaches a contract with another and thereby causes the non-breaching party to defend an action with a third person, the defending party's costs, including attorney fees, constitute recoverable items of damage. *See, e.g., Fairway Builders, Inc. v. Malouf,* 124 Ariz. 242, 603 P.2d 513 (App. 1979); *see also D. Dobbs, Remedies* § 3.8 at 195 (1973).

I perceive no reason for not following that rule here. *See Roach Aircraft, Inc. v. Sable,* 513 P.2d 244 (Colo.App.1973) (not selected for official publication). However, even if such award is not sustainable under the breach of contract claim, there is an alternative basis for the award in this case.

The trial court found, on supporting evidence, that:

"Wilson's position as both the engineer with authority over WSG, the contractor, and as WSG's subcontractor, *fails to comport with standards of good faith and fair dealing....*" Many times

when WSG requested Wilson to make a decision on the project, Wilson was either unable to provide the necessary direction to accomplish the work, or as evidenced by it's [sic] letter ... [it was] unwilling to do so. Wilson, in the court's opinion, could not have it both ways...." (emphasis supplied)

Thus, the trial court properly characterized Wilson's conduct as tortious in nature.

In *Western Insurance Co. v. Brochner*, 682 P.2d 1213 (Colo.App.1983) this court approved the rule set forth in Restatement (Second) of Torts § 914(2) which provides:

"One who through the tort of another has been required to act in the protection of his interest by bringing or defending an action against a third person is entitled to recover reasonable compensation for loss of time, attorneys fees and other expenditures thereby suffered in the earlier action."

On certiorari, *Brochner* was reversed on other grounds; however, the supreme court did not reject application of the Restatement rule if, as here, a party is without fault in the underlying action. *Brochner v. Western Insurance Co.*, 724 P.2d 1293 (Colo.1986).

WSG's counterclaim against Wilson for the attorneys fees due Fidelity was predicated upon allegations that Fidelity should not have been joined because WSG was financially solvent. While this theory lacks legal merit, it is axiomatic that a judgment should award a party litigant the relief established by the evidence. C.R.C.P. 54(c); *Johnson v. Bovee*, 40 Colo.App. 317, 574 P.2d 513 (1978).

Here, despite the fact that the court found that Wilson breached a covenant of good faith, WSG, who was not at fault for breach of any contract, was required to pay its attorney fees to establish that Wilson breached the contract as well as the fees incurred by Fidelity in defending as WSG's surety. In my judgment, given the substantial and ever-increasing costs of litigation, courts should seek to assure that one who acts in good faith is wholly compensated for actual losses he suffers by another's bad faith breach of contractual obligations.