**Ruben BROCHNER, Petitioner,**

v.

**WESTERN INSURANCE COMPANY, a Kansas Corporation, and the Community Hospital Association, a Colorado Corporation, Respondents.**

No. 84SC55.

Supreme Court of Colorado, En Banc.

Sept. 2, 1986.

Rehearing Denied Sept. 29, 1986.

---

Stevens & Littman, P.C., Andrew C. Littman, Boulder, for petitioner.

Cooper & Kelley, P.C., Paul D. Cooper, Kim B. Childs, Denver, for respondents.

1. A craniotomy is a type of brain surgery in which suspected abnormal or diseased brain tissue is removed.

KIRSHBAUM, Justice.

We granted certiorari to review the opinion of the Colorado Court of Appeals in *Western Insurance Co. v. Brochner*, 682 P.2d 1213 (Colo.App.1983), in which the Court of Appeals concluded that a joint tortfeasor whose negligence was the primary cause of a plaintiff's personal injuries was liable in indemnity to a second joint tortfeasor. The court also concluded that the primarily liable tortfeasor was obligated to pay the attorney fees and costs incurred by the secondarily liable tortfeasor in defending the original action. We reverse.

The Community Hospital Association (the hospital), which operates Boulder Community Hospital, granted staff privileges to Dr. Ruben Brochner in October 1964. Brochner performed numerous craniotomies [1] at the hospital over the next few months. In 1965, after reviews of those craniotomies indicated that tissue samples from many of the patients appeared normal, the hospital's executive committee orally required Brochner to obtain consultations before performing craniotomies if the relevant radiographic evidence did not clearly establish pathology. In 1966, the executive committee recommended to Brochner that he should obtain additional outside consultation on surgical pathological specimens.

In March 1968, the hospital's tissue committee received a report that fourteen of twenty-eight tissue samples taken from Brochner's neurosurgery patients were completely normal and that nine of the remaining fourteen samples indicated only low grade disease. An expert testified at trial that one normal tissue of 100 tissue samples was an acceptable ratio and that two normal tissues out of twenty-eight samples would require investigation.

On November 9, 1968, Brochner performed a craniotomy on Esther Cortez which resulted in injury to Cortez. Cortez later filed a civil action against Brochner and the hospital. She alleged that Bro-

chner negligently diagnosed her need for a craniotomy, that the hospital negligently continued Brochner's staff privileges when it knew or should have known that he was incompetent, and that the hospital negligently allowed Brochner to perform unnecessary surgery. The claim against Brochner was severed, and trial of the claims against the hospital commenced April 3, 1978. Prior to the conclusion of that trial, Cortez and the hospital agreed to a settlement of $150,000. Some time later, Cortez reached a settlement of her suit against Brochner, who was uninsured, for an undisclosed sum.

In 1979, the hospital and its subrogee, Western Insurance Company (Western), filed this indemnity action against Brochner, alleging that Brochner's negligence was the active and primary cause of Cortez' injuries while the hospital's negligence was passive and secondary. On September 15, 1982, the trial court entered judgment for Western and the hospital against Brochner as follows: (1) $150,000 as the sum paid by Western on behalf of the hospital to Cortez in settlement of her claim against the hospital; and (2) $10,000 to the hospital for expenses incurred in connection with the Cortez lawsuit not reimbursed by insurance. The trial court found that Brochner had breached a pre-existing duty to the hospital to abide by its rules and regulations, that Brochner's negligence was the primary cause of Cortez' injuries, that the hospital was independently negligent toward the plaintiff, and that the hospital's negligence was only a secondary cause of those injuries. The trial court also awarded Western its attorney fees and costs incurred in defending the original lawsuit. The Court of Appeals affirmed the trial court's judgment.

I

Brochner first argues that the adoption of the Uniform Contribution Among Tortfeasors Act, §§ 13–50.5–101 to –106, 6

C.R.S. (1985 Supp.) (the Act) abrogated the Colorado common law rule of indemnity to the extent such rule is based upon distinctions between primary and secondary fault. We do not agree that the statute *per se* altered the common law doctrine of indemnity. However, we conclude that existence of the Act sufficiently undermines the historical basis for the rule to require its modification.

The common law of Colorado has consistently followed the majority common law rule prohibiting contribution among joint tortfeasors. *Hamm v. Thompson,* 143 Colo. 298, 353 P.2d 73 (1960); *see Ringsby Truck Lines, Inc. v. Bradfield,* 193 Colo. 151, 563 P.2d 939 (1977). Recognizing that strict application of this rule sometimes produces unjust results, a rule permitting indemnity between tortfeasors in certain limited circumstances was also incorporated into this jurisdiction's panoply of common law principles. *Parrish v. DeRemer,* 117 Colo. 256, 187 P.2d 597 (1947); *Otis Elevator Co. v. Maryland Casualty Co.,* 95 Colo. 99, 33 P.2d 974 (1934); *Colorado & Southern Ry. v. Western Light & Power Co.,* 73 Colo. 107, 214 P. 30 (1923); *see* Laugesen, *Colorado's Contribution Among Tortfeasors Act,* 6 Colo.Law. 1485 (1977).

Contribution and indemnity are analytically quite distinct concepts. The former is based on the equitable notion that one tortfeasor should not be required to pay sums to an injured party in excess of that tortfeasor's proportionate share of the responsibility for the injuries. The latter is grounded in the legal principle that one joint tortfeasor, as indemnitor, may owe a duty of care to another joint tortfeasor, which duty is unrelated to any duty of care owed by the tortfeasors to the injured party.[2] *Ringsby,* 193 Colo. 151, 563 P.2d 939. When such duty is established, the indemnitor tortfeasor may be liable to the indemnitee tortfeasor for the entire loss experienced by the latter as the result of pay-

---

**2.** These concepts do not in theory necessarily undermine the notion that an injured party is entitled to be made whole, although as applied to some cases they may in fact undermine that notion.

ments made to the injured party. *See Public Service Co. v. District Court,* 638 P.2d 772 (Colo.1981).

Although the concept of indemnity liability is grounded in the nature of the relationship between joint tortfeasors, it is further defined by analysis of the conduct of such tortfeasors in regard to the damages suffered by the injured party. As initially adopted, our rule required the indemnitor's conduct to be the "sole, proximate and primary cause" of the damages suffered by the injured party. *Parrish,* 117 Colo. at 271, 187 P.2d at 605; *see Otis Elevator Co.,* 95 Colo. 99, 33 P.2d 974; *Colorado & Southern Ry.,* 73 Colo. 107, 214 P. 30. However, in *Jacobson v. Dahlberg,* 171 Colo. 42, 464 P.2d 298 (1970), this court modified the test for indemnity by eliminating the requirement that the indemnitor's conduct be the sole cause of the injured party's damages and adopting a broader standard requiring only that the indemnitor's conduct be the primary cause of such damages. In *Ringsby,* we emphasized the point that this primary/secondary test of indemnity was not based on the principle of comparative fault:

> The distinction between primary and secondary negligence does not mean that the "less negligent" defendant may recover from the "more negligent" defendant.... It has not been the policy of this state to distribute the loss between joint tortfeasors according to their degree of fault. This would amount to a form of contribution.

*Ringsby,* 193 Colo. at 155, 563 P.2d at 942 (citations omitted).

Our comment in *Ringsby* was necessary, of course, because of the historical prohibition of any form of contribution among joint tortfeasors. However, when the requirement of sole cause was abolished in *Jacobson,* the line separating contribution from indemnity, never firm in the best of circumstances, became even more difficult to fix. Indeed, difficulties with definitions and applications of the concepts of active, passive, primary and secondary negligence have been the subject of critical discussion by numerous courts and commentators. *E.g., Tolbert v. Gerber Industries, Inc.,* 255 N.W.2d 362 (Minn.1977); *Missouri Pacific R.R. v. Whitehead & Kales Co.,* 566 S.W.2d 466 (Mo.1978); *Dole v. Dow Chemical Co.,* 30 N.Y.2d 143, 331 N.Y.S.2d 382, 282 N.E.2d 288 (1972); *Pachowitz v. Milwaukee & Suburban Transport Corp.,* 56 Wis.2d 383, 202 N.W.2d 268 (1972); Jensvold, *A Modern Approach to Loss Allocation Among Tortfeasors in Products Liability Cases,* 58 Minn.L.Rev. 723 (1974); Walkowiak, *Implied Indemnity: A Policy Analysis of the Total Loss Shifting Remedy in a Partial Loss Shifting Jurisdiction,* 30 U.Fla.L.Rev. 501 (1978); Woods, *Some Observations on Contribution and Indemnity,* 38 Ark.L.Rev. 44 (1984); *see* Annot., 53 A.L.R.3d 184 (1973). These difficulties inevitably have produced great variations in judicial decisions, resulting in a severe lack of predictability and often causing as much inequity as the rule was designed to prevent. As the court in *Missouri Pacific R.R.,* 566 S.W.2d 466, observed:

> The elucidation of the distinction between concurrent tortfeasors as to their relative fault has spawned a series of court-coined terms which is "bewildering, to say the least." Davis, Indemnity Between Negligent Tortfeasors: A Proposed Rationale, 37 Iowa L.Rev. 517, 536 (1952). We ourselves have criticized them as unworkable and unsatisfactory.... In reality, these are all methods of weighing the degree of negligence ... used as the basis or test determining whether a moving party may be indemnified. Among them have been the distinction between "active and passive" negligence ... "primary and secondary" duty ... a combination of "primary and active" and "secondary and passive" roles in the "negligent situation"....
>
> ....
>
> We have worked ourselves into a situation where indemnity as between tortfeasors is decided on the basis of which one is guilty of "active" and which one guilty of "passive" negligence. "Passive" wins, "active" loses, no matter how

great the proportion of fault may have been of the passive tortfeasor.

. . . .

This is not a sensible way to fix responsibility in indemnity. It comes about by attempting to find a formula by which to excuse one of two joint or concurrent tortfeasors completely when as a practical matter they both are to blame, the true difference between them being only a matter of degree or relativity of fault. With a little ingenuity in phrasing, negligence can be made to be either "active" or "passive" as suits the writer. For example, "driving an automobile with bad brakes" or "running through the stop sign" or "using a defective crane" might be said to be "active" negligence, while "omitting maintenance of brake fluid level" or "neglecting to apply the brakes" or "failing to inspect the crane in order to discover its defectiveness" might be "passive" negligence—these are the same acts or omissions, but the outcome depends not upon the facts, but upon how someone chooses to characterize them.

*Missouri Pacific R.R.*, 566 S.W.2d at 470–71 (citations omitted).

Subsequent to this court's decision in *Ringsby*, 193 Colo. 151, 563 P.2d 939, the General Assembly adopted the Act, effective July 1, 1977.[3] This statute abolished the common law prohibition against contri-

bution among joint tortfeasors and established a rule authorizing such contribution based on degrees of relative fault. Section 13–50.5–102(6) contains the following provision respecting common law principles defining rights and responsibilities among joint tortfeasors:

This article does not impair any right [of] indemnity under existing law. Where one tortfeasor is entitled to indemnity from another, the right of the indemnity obligee is for indemnity and not contribution, and the indemnity obligor is not entitled to contribution from the obligee for any portion of his indemnity obligation.

In addition, section 13–50.5–103 provides as follows:

When there is a disproportion of fault among joint tortfeasors, the relative degrees of fault of the joint tortfeasors shall be used in determining their pro rata shares solely for the purpose of determining their rights of contribution among themselves, each remaining severally liable to the injured person for the whole injury as at common law.[4]

The statute thus recognizes that the remedies of indemnity and contribution are in theory mutually exclusive. *See* W. Prosser, *Law of Torts* §§ 50, 51 (4th ed. 1971); Restatement (Second) of Torts § 886A Comment *l* (1979).[5] However, as the parties

---

**3.** With some changes, the Act was based on the 1955 Model Uniform Contribution Among Tortfeasors Act.

**4.** Section 13–50.5–103 was amended during the 1986 legislative session. That section now provides:

The relative degrees of fault of the joint tortfeasors shall be used in determining their pro rata shares.

**5.** In comments to §§ 886A and 886B of the Restatement, drafters discussed the tension between common law indemnity and statutory provisions for contribution. Comment *l* to § 886A of the Restatement (Second) of Torts provides:

Indemnity, which shifts the entire loss from one tortfeasor to another, and contribution, which shifts only a proportionate share of that loss, are mutually inconsistent remedies. When there is a right of indemnity, it con-

trols, and neither tortfeasor has a right of contribution against the other.

In a state following comparative contribution, or contribution according to the comparative fault of the parties, contribution may tend to merge with indemnity, and the technical distinctions of indemnity may become less important. The all-or-nothing approach of indemnity is likely to become less desirable and some of the traditional bases for indemnity may be absorbed by contribution.

In a similar vein, comment *l* to § 886B provides:

The law of indemnity developed at an earlier time when contribution was not available. Its all-or-nothing remedy was thus the only relief available to a joint tortfeasor who had paid the full amount of the injury. Courts therefore were inclined to be ready to expand the list of situations in which indemnity might be granted. The list has come to include many situations in which the indemnitee was

here have recognized, a tortfeasor entitled to indemnity under a primary/secondary negligence analysis may also be able to benefit from the rule of comparative contribution established by the Act. We cannot agree with Brochner's arguments that the General Assembly intended by its adoption of the Act to alter the common law of indemnity as established by this court. The plain language of section 13–50.5–102(6) refutes such argument. However, the General Assembly's adoption of the principle of contribution among joint tortfeasors invites, if it does not require, reconsideration of the doctrine of indemnity between joint tortfeasors.[6]

Joint tortfeasors are now subject to contribution among themselves based upon their relative degrees of fault. That principle is at odds with the essential characteristic of our present rule of indemnity that, without regard to apportionment of fault, a single tortfeasor may ultimately pay the expense of all injuries sustained by a third party as the result of negligent conduct by two or more tortfeasors. There can be no mistake concerning the intent of the General Assembly to establish the policy of responsibility related to proportionate fault in the context of personal injury litigation. Section 13–50.5–102(6) is virtually identical to section 1(f) of the 1955 version of the Uniform Act.[7] Section 2 of the Uniform Act provides:

> In determining the pro rata shares of tortfeasors in the entire liability (a) their relative degrees of fault *shall not* be considered; (b) if equity requires the collective liability of some as a group shall constitute a single share; and (c) principles of equity applicable to contribution generally shall apply.

Unif. Contribution Among Tortfeasors Act § 2, 12 U.L.A. 87 (1975) (emphasis added). The General Assembly's decision to reject section 2 of the Uniform Act, while enacting section 13–50.5–103, reinforces the conclusion that the Act seeks to apportion

definitely at fault but not to as great an extent as the indemnitor—so that a decision between all and nothing would be made for all rather than nothing.

With the advent and free availability of contribution, the nature of the problem has changed and the courts may have the opportunity of apportioning the financial responsibility between the parties. This may produce a gradual expansion of the situations covered by contribution, at the expense of indemnity. Indeed, in the growing number of jurisdictions that determine the equitable shares of the obligation for contribution on the basis of the comparative fault of the parties, it may well develop that the two remedies will merge into each other, and that proportionate contribution will be determined by the factfinder in accordance with the relative percentages of fault for the several parties. (See § 886A, Comment *l*). This would eliminate the occasion for some of the highly technical decisions that have been rendered in actions for indemnity.

6. The question of whether our common law doctrine of indemnity should be preserved or abolished in situations where the party seeking indemnity is vicariously liable or is without fault is not presented by the circumstances of this case.

7. An initial version of the Uniform Act was promulgated in 1939. *See* Unif. Contribution Among Tortfeasors Act, 12 U.L.A. 57 (1975). Eighteen states, including Colorado, have adopted either the 1939 or 1955 version of the Uniform Act. Thirteen of these states have by judicial decision limited indemnity to those situations where the party seeking indemnity is liable to the third party only vicariously and was not in any sense negligent or at fault. In those thirteen states there is no conflict between the indemnity clause and the general concept in the Uniform Act of allocating fault among joint tortfeasors. In the remaining five states, no cases have discussed the impact of the model legislation upon former doctrines of indemnity.

Other states, while not adopting the Uniform Act, have enacted their own comparative negligence and contribution legislation. In many of those jurisdictions, judicial decisions have interpreted the legislation as abrogating the common law of indemnity in favor of a concept of comparative negligence or contribution. *E.g., Teachers Ins. Co. v. Smith,* 128 Cal.App.3d 862, 180 Cal.Rptr. 701 (1982); *Kennedy v. City of Sawyer,* 228 Kan. 439, 618 P.2d 788 (1980); *Pettis v. State,* 340 So.2d 1108 (La.App.1976); *Tolbert v. Gerber Industries, Inc.,* 255 N.W.2d 362 (Minn.1977); *Missouri Pacific R.R. v. Whitehead & Kales Co.,* 566 S.W.2d 466 (Mo. 1978); *Dole v. Dow Chemical Co.,* 30 N.Y.2d 143, 331 N.Y.S.2d 382, 282 N.E.2d 288 (1972); *New Terminal Warehouse Corp. v. Wilson,* 589 S.W.2d 465 (Tex.Civ.App.1979); *Pachowitz v. Milwaukee & Suburban Transport Corp.,* 56 Wis.2d 383, 202 N.W.2d 268 (1972).

responsibility for damages among joint tortfeasors based upon relative degrees of fault. More recently, the General Assembly has abolished the principle of joint and several liability. Section 13–21–111.5(1), effective July 1, 1986, provides as follows:

> In an action brought as a result of a death or an injury to person or property, *no defendant shall be liable for an amount greater than that represented by the degree or percentage of the negligence or fault* attributable to such defendant that produced the claimed injury, death, damage, or loss.

(emphasis added). This new provision extends the principle that liability for negligence should be based on proportionate fault.

■ In view of these legislative enactments, a tortfeasor no longer may unfairly be forced to pay all or a disproportionate share of damages suffered by an injured party as the result of negligent conduct by two or more joint tortfeasors. The principle of proportionate fault adopted by the General Assembly represents a rational and equitable approach to the problem of allocating ultimate responsibility between or among joint tortfeasors for the payment of damages to an injured party. Application of this principle will prove far more certain in varied factual contexts and will consequently promote more predictability than any continued effort to perpetuate ephemeral distinctions based on primary or secondary negligence concepts. For these reasons we conclude that the doctrine of indemnity insofar as it requires one of two joint tortfeasors to reimburse the other for the entire amount paid by the other as damages to a party injured as the result of the negligence of both joint tortfeasors, is no longer viable, and is hereby abolished.[8]

■ In this case, the trial court found that the hospital acted negligently and that such negligence was independent of Brochner's negligence. *See Moon v. Mercy Hospital*, 150 Colo. 430, 373 P.2d 944 (1962). As a joint tortfeasor, the hospital has no right to seek indemnity from Brochner; its sole remedy lies in contribution pursuant to the terms of the Act. Section 13–50.5–105(1)(b) provides:

> When a release or a covenant not to sue or not to enforce judgment is given in good faith to one of two or more persons liable in tort for the same injury or the same wrongful death:
>
> . . . .
>
> It discharges the tortfeasor to whom it is given from all liability for contribution to any other tortfeasor.

In *Coniaris v. Vail Associates, Inc.*, 196 Colo. 392, 586 P.2d 224 (1978), we held that the Act applied to settlements entered into on and after July 1, 1977. Because both Brochner and the hospital settled with Cortez after July 1, 1977, neither is entitled to contribution from the other.

## II

In light of our conclusion that the indemnity based on primary and secondary fault is no longer available among joint tortfeasors, we need not address Brochner's contention that the Court of Appeals erred in concluding that Brochner owed a duty to the hospital and was primarily liable for Cortez' injuries.

## III

Brochner's final argument is that the Court of Appeals erred in awarding Western the attorney fees and costs it incurred in defending against Cortez' original lawsuit. We agree.

■ The Court of Appeals based the award of attorney fees on section 914(2) of the Restatement (Second) of Torts (1979), which provides:

> One who through the tort of another has been required to act in the protection of his interests by bringing or defending an action against a third person is entitled to recover reasonable compensation for loss of time, attorney fees and other expenditures thereby suffered or incurred in the earlier action.

**8.** *See* note 6.

*Accord Elijah v. Fender,* 674 P.2d 946 (Colo.1984); *Sun Indemnity Co. v. Landis,* 119 Colo. 191, 201 P.2d 602 (1948); *International State Bank of Trinidad v. Trinidad Bean & Elevator Co.,* 79 Colo. 286, 245 P. 489 (1926). This exception to the general rule prohibiting attorney fee awards is applicable, however, only if the party seeking such attorney fees was without fault as to the underlying action. *See also Elijah,* 674 P.2d 946; *International State Bank of Trinidad,* 79 Colo. 286, 245 P. 489; *Brem v. United States Fidelity & Guaranty Co.,* 206 A.2d 404 (D.C.App. 1965); *Kamyr, Inc. v. Boise Cascade Corp.,* 268 Or. 130, 519 P.2d 1031 (1974). Western was required to expend sums for attorney fees and costs in defending the Cortez lawsuit, in part because of the hospital's independently negligent conduct, and not solely because of Brochner's negligence. The provisions of section 914(2) are, therefore, inapplicable to Western's claim for attorney fees.

In the absence of some specific rule of law authorizing the recovery of attorney fees, the general rule is that attorney fees and expenses of litigation are not recoverable. *Beebe v. Pierce,* 185 Colo. 34, 521 P.2d 1263 (1974); *see Taxpayers for the Animas-La Plata Referendum v. Animas La-Plata Water Conservancy District,* 739 F.2d 1472 (10th Cir.1984). Western has not suggested any basis for its claim for attorney fees and costs other than section 914(2) of the Restatement. Accordingly, the general rule prohibiting such award applies.

The judgment of the Court of Appeals is reversed.

VOLLACK J., dissents in part, and ROVIRA, J., joins in the partial dissent.

ERICKSON and DUBOFSKY, JJ., do not participate.

VOLLACK, Justice, dissenting in part:

I agree with Part III of the majority opinion reversing the award of attorneys fees. I respectfully dissent to Part I of the opinion which abolishes the common law doctrine of indemnity.

The majority opinion initially recognizes that contribution and indemnity are analytically quite distinct concepts. Slip op. at 1295. Contribution and indemnity are mutually exclusive remedies. Restatement (Second) of Torts § 886A(4) (1979). They are universally distinguished. Neither contribution nor indemnity are tort actions, but the right to contribution arises from payment by one joint tortfeasor of more than his proportionate share of loss, *see, e.g., Coniaris v. Vail Associates, Inc.,* 196 Colo. 392, 586 P.2d 224 (1978), whereas indemnity arises out of the existence of a pre-tort duty. *See Ringsby Truck Lines, Inc. v. Bradfield,* 193 Colo. 151, 563 P.2d 939 (1977); *see generally* Restatement (Second) of Torts § 886B (1979). Contribution comes into play after a judgment has been entered against joint tortfeasors in favor of an injured party, and requires that each of the culpable tortfeasors contribute to the total amount of damages that portion which relates to each tortfeasor's proportionate share of the responsibility. On the other hand, indemnity arises from a duty of care which one tortfeasor owes to the other tortfeasor, and that duty is unrelated to any duty of care owed by the tortfeasors to the injured party. While both concepts share the common result of apportioning the responsibility to pay damages to an injured party among parties who may have each been negligent, each concept is based upon different theoretical bases.

Contribution produces more equitable results because the proportionate share of responsibility for damages is directly related to each tortfeasor's proportionate fault in causing the injury. Indemnity, on the other hand, results in an "all or nothing" determination whereby the party who is the "primary" cause of the injured party's damages may be required to carry the burden of the entire loss. *Jacobson v. Dahlberg,* 171 Colo. 42, 464 P.2d 298 (1970). Thus, an indemnity analysis fails to take into account the comparative fault of the joint tortfeasors.

While recognizing the distinction between the concepts of contribution and indemnity, and also the sometimes inequitable results of the application of indemnity principles, the majority then concludes that the doctrine of contribution can serve the same purpose as the doctrine of indemnity and, based on that premise, proceeds to abolish the common law doctrine of indemnity between joint tortfeasors, except possibly in cases involving vicarious liability. I disagree with this conclusion.

The General Assembly, by its adoption of the Uniform Contribution Among Tortfeasors Act, section 13–50.5–101 to –106, 6 C.R.S. (1985 Supp.), obviously did not intend the result reached by the majority opinion. The Act specifically preserved rights of indemnity in section 13–50.5–102(6).[1] I do not agree that the court should do away with the right of indemnity when the General Assembly, by the plain language of the statute, recognized that the Act was not intended to impair any right of indemnity under existing law.

The question of whether indemnity or contribution exists as a remedy is governed by the facts of the case. In the matter at hand, the trial court found the right to indemnity arose out of a pre-existing duty owed by Brochner to the hospital. The record reflects that the hospital's executive committee required Brochner to obtain consultations before performing craniotomies if the relevant radiographic evidence did not clearly establish pathology. The evidence shows that the hospital was aware of Brochner's performance of needless craniotomies over a period of at least three years. As a result, the hospital required Brochner to consult before performing this surgical procedure. No such consultation took place in this case. Having agreed to do so, a duty existed between Brochner and the hospital to follow the required procedure. *Ringsby Truck Lines, Inc. v. Bradfield*, 193 Colo. 151, 563 P.2d 939 (1977); *Naiman v. Flickinger*, 43 Colo.App. 279, 605 P.2d 63 (1980). I would conclude that under the facts of this case, the prerequisites for the application of indemnity principles existed. The trial court's conclusion that Brochner's negligence was active while the hospital's negligence was passive or an error of omission in failing to supervise a staff physician supports the award of damages in favor of the hospital and against Brochner. Requiring the physician to bear the full extent of the loss highlights the result which may occur in application of indemnity principles as established by our common law.

Furthermore, I disagree with the majority's conclusion that the adoption of the Uniform Contribution Among Tortfeasors Act requires a reconsideration of the doctrine of indemnity. The majority recognizes the difference between the two concepts, but then concludes that because contribution acts more equitably in its treatment of the apportionment of fault, the doctrine of indemnity should be abolished. Such a result denies the hospital a remedy to which it is properly entitled. I would conclude that the doctrine of indemnity is still a viable concept and should be retained.

The majority, by considering the provisions of section 13–50.5–105(1)(b), which releases a settling tortfeasor from any liability for contribution to another tortfeasor, applies rules pertaining to contribution to a situation where the doctrine of indemnity applies. By the plain language of this statute, it only applies to liability for contribution. However, this is a case involving indemnity. Application of a contribution analysis at this stage of the proceedings is inequitable. While I do not feel the hospital should be held totally free from fault in this situation, in the absence of legislation by the General Assembly which would apply a comparative fault treatment to indem-

1. The statute, 13–50.5–102(6), 6 C.R.S. (1985 Supp.), provides:

This article does not impair any right or [sic] indemnity under existing law. Where one tortfeasor is entitled to indemnity from another, the right of the indemnity obligee is for indemnity and not contribution, and the indemnity obligor is not entitled to contribution from the obligee for any portion of his indemnity obligation.

nity actions, the physician must carry the burden of the entire loss.

In light of the plain language of the statutes retaining the right of indemnity, and only allowing the discharge of a settling tortfeasor in contribution situations, I cannot agree with the majority's conclusion that the doctrine of indemnity need be abrogated.

I would affirm in part and reverse in part.

I am authorized to state that ROVIRA, J., joins in this partial dissent.