24CA2136 Cotton v Scholle 01-22-2026

COLORADO COURT OF APPEALS

Court of Appeals No. 24CA2136
Routt County District Court No. 23CV30004
Honorable Michael A. O'Hara III, Judge

Christopher Cotton,

Plaintiff-Appellee,

v.

William Scholle,

Defendant-Appellant.

JUDGMENT AFFIRMED

Division III
Opinion by JUDGE KUHN
Dunn and Martinez*, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced January 22, 2026

Ramos Law, Jared J. Mazzei, Jessica L. McBryant, Northglenn, Colorado, for Plaintiff-Appellee

Garnett Powell Maximon Barlow & Farbes, Robert L. Barlow, Kristin L. Arthur, Denver, Colorado, for Defendant-Appellant

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2025.

¶ 1     Defendant, William Scholle, appeals the trial court's pretrial C.R.C.P. 56(h) order determining that he wasn't entitled to recover certain damages under the wrong-of-another doctrine from plaintiff, Christopher Cotton.  We affirm.

## I.     Background

¶ 2     One Saturday afternoon in January 2022, Cotton met up with his girlfriend at a Steamboat Springs restaurant to celebrate the sale of his townhome.  After eating lunch and having at least one margarita and a tequila shot at the restaurant, Cotton and his girlfriend continued the celebration at a bar.  There, he consumed various alcoholic beverages, including multiple beers and bourbon shots.  Cotton stayed at the bar until evening, when he left his girlfriend behind and, intoxicated, started to drive back home.  He didn't remember much about what happened after that point.

¶ 3     The record shows that, instead of going home, Cotton drove onto Scholle's property about an hour and a half after he had left the bar.  He turned off a rural county road, went through an open gate, and drove up a long driveway leading to Scholle's newly constructed residence, located about three-tenths of a mile from the road.  Upon approaching the residence, Cotton drove off the

driveway, down around the side of the home, and into the backyard, before crashing into a snowbank.  Stuck in the snow at an unknown location, Cotton left a voicemail for his girlfriend: "Hey. I'm stuck.  I don't know how to get out of it[.]  Please.  Give me a call."

¶ 4    Shortly thereafter, Scholle confronted Cotton, who was a stranger to him, with a handgun while his wife and two minor daughters remained inside the home.  During this encounter, Scholle ordered an unarmed Cotton to, among other things, walk away from his car and lay face down on the concrete patio.  Then Scholle's wife ordered Cotton to place his hands on his head while lying on the ground.  Cotton complied with these commands and got down on the patio with his feet still in the snow.  While on the ground, however, Cotton told the Scholles that he was "freezin[g] to death" and had to stand up.  After getting up, he started to walk toward the open patio sliding glass door where Scholle and his wife were standing.  Then Scholle shot Cotton once in the abdomen from a close distance.  Cotton suffered severe injuries but survived the shooting.

¶ 5    In Routt County Case No. 22CR70, the district attorney's office charged Scholle with first degree assault with a deadly weapon, felony menacing, and prohibited use of a weapon.[1] A jury acquitted him of all criminal charges.

¶ 6    In the meantime, Cotton filed the present civil action against Scholle in connection with the shooting. Cotton asserted claims for negligence, battery, and premises liability, pleading the latter two claims in the alternative to the negligence claim. In response, Scholle counterclaimed for trespass and intrusion upon seclusion.[2] He also sought "attorney fees related to [Scholle's] defense [in the criminal case], which were proximately caused by . . . Cotton's intrusion."

¶ 7    Before trial, Cotton filed a Rule 56(h) "Motion for [a] Determination of a Question of Law Regarding . . . Scholle's Damages Arising from His Criminal Defense." Cotton argued that

---

[1] We take judicial notice of the contents of court records in this related criminal proceeding. *See People v. Sa'ra*, 117 P.3d 51, 56 (Colo. App. 2004).

[2] Scholle's wife intervened and filed a complaint against Cotton, also asserting claims for trespass and intrusion upon seclusion. Cotton stipulated to the wife's dismissal from the case before trial.

Scholle wasn't entitled to recover under the wrong-of-another doctrine about $1.3 million in attorney fees and related expenses that Scholle had incurred for his criminal defense because the prosecutor's decision to charge him in connection with the incident wasn't a natural and "probable consequence of Cotton mistakenly entering upon Scholle's property without permission." Instead, Cotton argued, Scholle intentionally shooting him was the cause of the underlying criminal litigation.

¶ 8    In his response to the motion, Scholle argued that genuine issues of material fact precluded resolving his wrong-of-another damages under Rule 56(h). Specifically, noting that the criminal jury had acquitted him of all charges in the criminal case, Scholle posited that his "arguably . . . justifiabl[e]" shooting of Cotton and the resulting criminal prosecution were reasonably foreseeable consequences of Cotton's conduct. Scholle argued that, under these circumstances, the trial court was required to submit the issue of his entitlement to the claimed damages to the jury rather than resolving the question as a matter of law. The trial court granted the motion, concluding that the wrong-of-another doctrine was inapplicable because Scholle's shooting, the prosecutor's

4

decision to bring criminal charges, and the associated litigation expenses weren't foreseeable consequences of Cotton's conduct.

¶ 9     Cotton's premises liability claim and Scholle's counterclaims proceeded to trial, over which a different judge presided.[3]  At Scholle's request, the trial court directed a verdict in his favor on his trespass counterclaim, awarding him nominal damages of $1. Scholle simultaneously withdrew his counterclaim for intrusion upon seclusion.  The jury returned a special verdict for Cotton on his premises liability claim, awarding him $500,000 in noneconomic damages and $530,870.97 in economic damages.

## II.    Analysis

¶ 10    Scholle contends that the trial court erred by determining that, as a matter of law, he wasn't entitled to recover the claimed wrong-of-another damages pertaining to his criminal defense because (1) the court improperly considered the credibility of witnesses in granting the Rule 56(h) motion; and (2) genuine issues

---

[3] Before trial, the court dismissed Cotton's claims for negligence and battery, reasoning that the Premises Liability Act preempted those claims by providing an exclusive remedy for his claimed injuries.  Cotton doesn't challenge this ruling on appeal.  *See City of Aurora v. 1405 Hotel, LLC*, 2016 COA 52, ¶ 16 n.3 (noting no need to address an issue not raised on appeal).

of material fact existed as to whether Cotton proximately caused the underlying criminal prosecution, precluding the court from deciding that issue as a question of law.  We discern no reversible error.

## A.     Standard of Review

¶ 11     Rule 56(h) allows a party to move for a determination of a question of law at any time after the last pleading is filed.  Because the summary judgment standard applies to such a motion, *Coffman v. Williamson*, 2015 CO 35, ¶ 12, a trial court may grant an order under Rule 56(h) only "[i]f there is no genuine issue of any material fact necessary for the determination of the question of law."  In determining whether a genuine issue of material fact exists, the court looks at the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits," C.R.C.P. 56(c), without assessing witness credibility or weighing evidence, *S. Conejos Sch. Dist. RE-10 v. Wold Architects Inc.*, 2023 COA 85, ¶ 17.  "The nonmoving party is entitled to all favorable inferences from the undisputed facts, and all doubts as to the existence of a triable issue of fact must be resolved against the moving party."  *Williamson*, ¶ 12.

¶ 12 We review de novo a trial court's order deciding a question of law under Rule 56(h). *Great N. Props., LLLP v. Extraction Oil & Gas, Inc.*, 2024 CO 28, ¶ 20. In doing so, we apply the same standards as the trial court. *Mitton v. Danimaxx of Colo., Inc.*, 2023 COA 18, ¶ 9. We will not reverse a trial court's decision to grant a Rule 56(h) motion if we conclude that any error was harmless. *See* C.A.R. 35(c) ("The appellate court may disregard any error or defect not affecting the substantial rights of the parties."). An error is harmless when it doesn't affect a substantial right of a party, and a court must set aside such errors at every stage of the proceedings. C.R.C.P. 61. "An error affects a substantial right only if 'it can be said with fair assurance that the error substantially influenced the outcome of the case or impaired the basic fairness of the trial itself.'" *Bly v. Story*, 241 P.3d 529, 535 (Colo. 2010) (quoting *Banek v. Thomas*, 733 P.2d 1171, 1178 (Colo. 1986)).

### B. Basic Principles of the Wrong-of-Another Doctrine

¶ 13 "Colorado — like many states — has long-recognized that litigation expenses and attorneys' fees incurred by a party in one case may, in certain circumstances, be an appropriate measure of damages against a third party in a subsequent action." *Rocky*

*Mountain Festivals, Inc. v. Parsons Corp.*, 242 P.3d 1067, 1071 (Colo. 2010) (footnote omitted).  This rule, known as the wrong-of-another doctrine, doesn't establish a stand-alone cause of action or constitute "an exception to the so-called American rule that parties are responsible for their own litigation costs and fees."  *Id.*  Instead, it is only "an acknowledgement that the litigation costs incurred by a party in [a] separate litigation may sometimes be an appropriate measure of compensatory damages against another party."  *Id.*

¶ 14     Specifically, reasonable litigation costs and attorney fees may be recovered as damages from a third-party wrongdoer "[w]hen the natural and probable consequence of a wrongful act has been to involve [the party seeking the damages] in litigation with others." *Elijah v. Fender*, 674 P.2d 946, 951 (Colo. 1984) (quoting *Int'l State Bank of Trinidad v. Trinidad Bean & Elevator Co.*, 245 P. 489, 489 (Colo. 1926)); *see also* Restatement (Second) of Torts: Damages § 914(2) (A.L.I. 1979) (featuring a restatement of the wrong-of-another doctrine in the chapter on damages).  In other words, the doctrine only allows a party to seek reasonable attorney fees and costs from a third-party wrongdoer if the wrongdoer's conduct was a proximate cause of the underlying dispute.

¶ 15    Such damages are recoverable even if a party requesting them *brought* and ultimately failed to *prevail* in the underlying action. *See Elijah*, 674 P.2d at 951 (noting that the wrong-of-another doctrine doesn't require "that a party be a defendant in prior litigation to recover costs" or "that the party prevail in the earlier litigation"). Likewise, recovery is allowed even if a third party's "wrongful conduct [was only] one of the causes that in natural and probable consequence produced the claimed expense." *Stevens v. Moore & Co. Realtor*, 874 P.2d 495, 497 (Colo. App. 1994). The third party's wrongful conduct need not be the *sole* cause of the prior litigation. *Id.*; *Rocky Mountain Festivals, Inc.*, 242 P.3d at 1071. However, the wrong-of-another doctrine applies "only if the party *seeking* such attorney fees was without fault as to the underlying action." *Brochner v. W. Ins. Co.*, 724 P.2d 1293, 1300 (Colo. 1986) (emphasis added). So in evaluating fault, we consider whether the party's own actions caused the underlying litigation. *See Rocky Mountain Festivals, Inc.*, 242 P.3d at 1072.

## C. The Trial Court Erred by Relying on Its Factual Findings Made in the Criminal Proceeding to Decide the Rule 56(h) Motion

¶ 16 In addressing whether Scholle had compensable damages under the wrong-of-another doctrine, the trial court observed that while the "matter [was] presented in a motion for [a] determination of [a] question of law, the court [was] in the unique posture of having previously considered the evidence and made findings or conclusions that [we]re directly relevant to the questions of proximate cause, foreseeability, and intervening acts." The court noted that, during the "make my day" immunity hearing in the criminal case, over which the same trial judge presided, "[t]he court found that certain factual statements made by [Scholle] and his wife at the hearing were incredible as a matter of law because they differed from the facts presented by the Scholles to law enforcement the night of the incident."

¶ 17 Specifically, Scholle testified at the immunity hearing that Cotton had lunged at Scholle — and engaged in a physical altercation with him — before agreeing to get on the ground. The court noted that Scholle had also testified that Cotton "suddenly rose from the ground, after [thirty to forty] seconds, got into a

10

crouch position, reached towards his waistband, and moved quickly and aggressively towards [the Scholles] while reaching for what [Scholle] thought might have been a weapon."

¶ 18    The court reiterated that Scholle's version of the events wasn't credible.  The court noted that Scholle failed to provide these details to responding police officers the night of the incident.  The court then found that Scholle "did not have a reasonable belief that [Cotton] was doing anything at the time [of the shooting] other than standing up and that [Scholle] could not have a reasonable belief that [Cotton] was going to use physical force against anyone." Consequently, the court concluded that Scholle wasn't entitled to recover his criminal defense expenses under the wrong-of-another doctrine because the prosecutor's decision to bring criminal charges against him wasn't a foreseeable consequence of Cotton's conduct. The court reasoned that "the charging decision was not foreseeable because, based on common sense perceptions of risks created by various conditions and circumstances, the shooting and [the] charging decision were not within the *scope of danger* created by [Cotton's] conduct."

¶ 19    Scholle challenges this ruling on the grounds that the trial court failed to determine whether there was a factual dispute for the jury to resolve as to whether Cotton's conduct was a proximate cause of the underlying criminal prosecution.  Instead, Scholle asserts, the court decided the Rule 56(h) motion by improperly relying on the credibility determinations and factual findings that it had previously made at the "make my day" immunity hearing in the separate criminal case.  We agree with Scholle.

¶ 20    As noted, summary judgment principles govern motions for a determination of a question of law under Rule 56(h).  *Williamson,* ¶ 12; *Stapleton v. Pub. Emps. Ret. Ass'n,* 2013 COA 116, ¶ 20.  This means that in deciding whether to grant a Rule 56(h) motion, a trial court's function is to determine whether any material facts are disputed, presenting a genuine triable issue for the jury to resolve. *See Andersen v. Lindenbaum,* 160 P.3d 237, 239 (Colo. 2007).  It's not the court's role to determine the credibility of witnesses, assess the weight of the evidence, or otherwise resolve factual disputes. *Id.*; *Capitran Inc. v. Great W. Bank,* 872 P.2d 1370, 1376 (Colo. App. 1994); *see also Scott Sys., Inc. v. Scott,* 996 P.2d 775, 778 (Colo. App. 2000) (noting that a trial court doesn't engage in factfinding

when ruling on a motion for summary judgment).  The court may enter an order determining the question of law only if there is no genuine issue as to any material fact necessary to reach that determination.  C.R.C.P. 56(h).

¶ 21    We conclude that the trial court violated those principles here. The court noted in its Rule 56(h) order that, at the criminal immunity hearing, the court had made some factual findings about what had occurred the night of the shooting.  Among other things, the court found that

- Cotton "exited the vehicle and took a few steps towards the patio" after his car got stuck in the snow in the Scholles' backyard;

- Scholle and his wife "gave commands, often conflicting, to [Cotton]";

- Cotton "made statements such as 'I am not here to hurt anyone' and 'I am going to freeze to death'" during the encounter; and

- Cotton started to comply with Scholle's order to lie down on the concrete patio, but then he "almost immediately began to stand up and [Scholle] shot him."

¶ 22    After summarizing these previous findings, the trial court noted that, during the criminal immunity hearing, Scholle and his wife provided additional details regarding the incident but that the court didn't find those statements credible.  Specifically, the court reiterated that it didn't find credible the couple's testimony that Cotton had initiated a physical altercation with Scholle before he agreed to get on the ground and that, after he stood up, Cotton reached for his waistband as if he was going to pull a weapon.  The court reasoned that "no one would have omitted such 'facts' when speaking for hours with law enforcement on the night of the incident if those 'facts' had been true."  And considering the nature of Cotton's conduct in light of these findings, the court concluded that he couldn't have reasonably foreseen that Scholle would shoot him and later be charged with criminal offenses.

¶ 23    This record shows that, based entirely on its factual findings and credibility determinations from the criminal immunity hearing, the trial court adopted a version of the incident that excluded certain alleged acts Scholle said had happened.  Because the court didn't find believable Scholle's statements relating to his theory that he had acted in defense of himself and his family, the court

14

determined that his decision to use deadly force against Cotton was unreasonable. And based on all of this, the court then concluded that Cotton didn't proximately cause the shooting and the resulting criminal prosecution of Scholle.

¶ 24    Thus, in ruling upon the Rule 56(h) motion for a determination of a question of law, the trial court

- engaged in detailed factfinding and credibility determinations;

- resolved the factual dispute concerning Scholle's self-defense and defense of others claims against him;

- and concluded that Scholle couldn't recover wrong-of-another damages under those circumstances because Cotton couldn't have reasonably foreseen the shooting and the prosecutor's decision to bring charges in connection with the incident.

But the applicable summary judgment principles prohibited the trial court from assessing the credibility of Scholle and his wife and resolving the factual dispute against Scholle as the nonmoving party. *See Capitran,* 872 P.2d at 1376; *Williamson,* ¶ 12. "[F]oreseeability is the touchstone of proximate cause," *P.W. v.*

*Child.'s Hosp. Colo.*, 2016 CO 6, ¶ 24 n.7 (citation omitted), and is "usually an issue for the jury to decide," *Garcia v. Colo. Cab Co.*, 2023 CO 56, ¶ 19.  Under these facts, there was a genuine issue of material fact as to whether the shooting and the prosecutor's later decision to bring criminal charges against Scholle were foreseeable consequences of Cotton's conduct.

¶ 25    For these reasons, then, we conclude that the court erred by granting the Rule 56(h) motion and deciding whether Scholle could recoup the litigation costs and attorney fees related to his criminal defense under the wrong-of-another doctrine.  Instead, the court should have submitted the underlying factual questions to the jury. *See Colo. Cab Co.*, ¶ 19 (noting that a trial court may decide proximate causation as a question of law "[o]nly in the clearest of cases, where reasonable minds can draw but one inference from the evidence" (citation omitted)).

## D. The Trial Court's Error in Granting the Rule 56(h) Motion Isn't Reversible

¶ 26    Having reached this conclusion, we must next determine whether this error was harmless.  *See Bly*, 241 P.3d at 535.  Scholle contends that the trial court erred by denying his claim for

wrong-of-another damages as a matter of law and that the jury had to decide whether Cotton's trespass was a proximate cause of those damages. Scholle further argues that we should not consider anything that happened after the trial court ruled on the Rule 56(h) motion.

¶ 27    In response, Cotton contends that issue preclusion bars Scholle from challenging the question of causation on appeal because the jury's special verdict findings that Cotton "took no action contributing to the incident and that [Scholle] intentionally shot [Cotton]" "decisively established" that Scholle, and not Cotton, was "the proximate cause of the criminal litigation arising from the shooting." But while issue preclusion prevents a party from relitigating an issue that was previously litigated and decided in a *separate* proceeding, this doctrine doesn't apply when the issue was decided in the *same* proceeding. *Reynolds v. Cotten*, 2012 CO 27, ¶ 9; *see S.O.V. v. People in Interest of M.C.*, 914 P.2d 355, 359 (Colo. 1996) (noting that issue preclusion doesn't apply to prior rulings in the same pending case); *In re Marriage of Mallon*, 956 P.2d 642, 645 (Colo. App. 1998) (noting that issue preclusion applies to later "independent proceedings" but isn't a bar to a "party's later

17

assertions in the *same* litigation"). Thus, because the jury findings that Cotton points us to in support of his argument originated from the same action as the ruling that is being appealed, we conclude that the doctrine of issue preclusion is inapplicable here.

¶ 28    Nonetheless, though he calls it issue preclusion, the gist of Cotton's argument is that the jury verdict supports the conclusion that Scholle's own actions precipitated the underlying criminal litigation. In essence, then, Cotton argues that Scholle can't show that he suffered harm as a result of the trial court's decision to deny his damages claim as a matter of law, rather than sending that claim to the jury.

¶ 29    We agree with Cotton on this point. We conclude that, even if we were to assume without deciding that the shooting and the prosecutor's decision to bring charges against Scholle were reasonably foreseeable consequences of Cotton's trespass, any error here was harmless because the jury's verdict established that Scholle's conduct was also a cause of the criminal proceeding in which he had incurred the claimed costs and attorney fees. *See Brochner*, 724 P.2d at 1300; *Rocky Mountain Festivals, Inc.*, 242 P.3d at 1072.

### 1. *Brochner* and *Rocky Mountain Festivals, Inc.*

¶ 30    Recall that the wrong-of-another doctrine applies "only if the party seeking . . . attorney fees [incurred in another action] was *without fault* as to the underlying action." *Brochner*, 724 P.2d at 1300 (emphasis added). In *Brochner*, a patient sued a hospital and one of its doctors for injuries that she had suffered during an unnecessary brain surgery. *Id.* at 1294. At the time of the injury, the hospital was aware that the doctor had performed unnecessary brain surgeries on multiple patients in the past. *Id.* After the doctor and the hospital reached a settlement with the injured patient, the hospital separately sued the doctor to recover the attorney fees it had incurred in defending against the patient's action. *Id.* at 1295. The trial court granted the hospital's request, and a division of this court affirmed that ruling under the wrong-of-another doctrine. *Id.* at 1295, 1299. The supreme court reversed, reasoning that the hospital "was required to expend sums for attorney fees and costs in defending the [patient's] lawsuit, in part because of the hospital's independently negligent conduct, and not solely because of [the doctor's] negligence." *Id.* at 1300. Under these circumstances, the supreme court concluded that the wrong-

of-another doctrine didn't apply to the hospital's attorney fees claim. *Id.*

¶ 31 Roughly twenty-five years later, the supreme court revisited *Brochner*'s holding and reasoning in *Rocky Mountain Festivals, Inc.*, 242 P.3d at 1072. In that case, a town hired an engineering firm to prepare an audit report concerning a festival's water and wastewater usage. *Id.* at 1069. Based on the report, the town sought roughly $1.6 million in tap fees from a festival, consisting of $600,000 for water and $1 million for wastewater usage. *Id.* at 1069-70. The festival sued the town for an injunction preventing the town from collecting the fees. *Id.* at 1070. The court found "that it was 'without significant dispute' that the festival owed at least some unpaid water tap fees," awarding $100,000 to the town. *Id.* But the court also concluded that the festival prevailed on the wastewater claim because the engineering firm's "analysis had been deficient on numerous points," and the "festival had, if anything, *overpaid* the town for wastewater usage." *Id.*

¶ 32 The festival then sued the engineering firm in a separate action, "arguing that [the engineering firm's] faulty advice to the town had caused the festival to incur litigation costs and attorneys'

fees in the prior case that [it] should be entitled to recover" as a measure of damages for its negligence claim. *Id.* The trial court and a division of this court concluded that the festival was precluded from recovering those damages because the festival had been held partially liable in the underlying litigation, as evidenced by the order directing it to pay $100,000 in water tap fees to the town. *Id.* The supreme court disagreed with this reasoning, noting that the mere fact that the festival had only prevailed on some claims in the underlying action wasn't a per se bar to recovery under the rule from *Brochner*. *Id.* at 1075.

¶ 33 Specifically, the supreme court noted that its reference to the absence of fault in *Brochner* must be understood in the context of the circumstances of that case. *Id.* at 1072. In *Brochner*, the *Rocky Mountain Festivals, Inc.*, court observed, the hospital was a joint tortfeasor with the doctor because it had breached its own duty of care to the patient by failing to oversee the doctor after it found out that he had been performing unnecessary brain surgeries. *Id.* Accordingly, the hospital wasn't entitled to the wrong-of-another damages arising out of the underlying litigation because it was sued for the "breach of its own duty of care to the patient, and all the

21

costs the hospital incurred were due to its own wrong, not that of another." *Id.* The supreme court explained that its discussion of fault in *Brochner* was therefore not coextensive with the determination of liability but, rather, was "akin to a proximate cause determination, focusing on whether the underlying dispute arose from the actions of the parties then litigating it, or whether instead the dispute was thrust upon those litigants by some third party." *Id.*

¶ 34    After clarifying that the wrong-of-another damages analysis, in part, turned on whether a party's own conduct was a cause of the underlying action, the supreme court considered whether the festival was entitled to recover any costs and attorney fees, given that it had partially caused the earlier action by failing to pay the water tap fees. *Id.* at 1075. Because the court concluded that the festival hadn't caused the litigation pertaining to the wastewater claim, the court considered whether that claim was segregable from the water usage dispute, which the festival had caused. *Id.* The court concluded that the claims were based on different facts and, therefore, segregable because the engineering firm's analyses of the festival's water and wastewater usage were "based on entirely

22

distinct analytical methods and evaluated separately during the previous litigation." *Id.* Accordingly, the court concluded that the festival could potentially recover the amounts associated with the wastewater claim that it hadn't caused but not from the litigation over water usage, which it had caused, at least in part. *Id.*

¶ 35 In short, *Brochner* and *Rocky Mountain Festivals, Inc.* provide that a party may pursue damages for litigation expenses arising out of a separate dispute only if that party didn't cause that dispute through its own wrongful actions. Put another way, when a party had to participate in a separate litigation because of its own wrongdoing, the sought-after costs and attorney fees are deemed a product of its own wrong, not that of another. This principle is consistent with Colorado case law applying the wrong-of-another doctrine to award costs and attorney fees for the litigation that a party didn't cause through its own conduct. *See, e.g.*, *Elijah*, 674 P.2d at 948-52 (holding that property sellers were allowed to recover from their real estate broker the attorney fees that they had expended in a suit against a third party when the *broker* caused that suit by breaching his fiduciary duties to the sellers); *Stevens*, 874 P.2d at 496-97 (holding that a commercial landlord was

23

entitled to recover from his broker the attorney fees that he had incurred in a suit against a *delinquent tenant* when the broker caused that suit "in considerable part" by failing to convey to the landlord an offer the broker had received from a potential third-party tenant).

¶ 36    With this rule in mind, we next consider whether Scholle had a hand in having to defend himself in the underlying criminal litigation due to his own wrongful conduct.

### 2. Any Error in Granting the Rule 56(h) Motion Was Harmless Because the Jury Found that Scholle Was at Fault for the Underlying Dispute

¶ 37    Scholle's circumstances are distinguishable from those present in *Rocky Mountain Festivals, Inc.,* where the festival prevailed on the wastewater claim but was held liable for its unpaid water tap fees. 242 P.3d at 1070. Here, in contrast, the criminal litigation and the wrong-of-another damages that Scholle seeks to recover in the civil action arise from a single and indivisible set of facts, those surrounding his shooting of Cotton.

¶ 38    As noted above, Scholle fully prevailed in the criminal case because the jury acquitted him of all charges arising out of the shooting. But in the civil trial underlying this appeal, the jury

24

found that Scholle's actions — the same actions that resulted in the shooting and his criminal prosecution — were wrongful. Specifically, in its special verdict, the jury found the following:

- Scholle willfully or deliberately shot Cotton, and Scholle's conduct was "a cause of [Cotton's] injuries, damages or losses."

- Scholle didn't reasonably believe that he had to use deadly force to protect himself, his wife, or his property from Cotton or to prevent Cotton from committing a felony on his property.

- Scholle didn't tell Cotton to leave the property and "give him a reasonable opportunity to leave" before shooting him in the abdomen.

- Scholle used an unreasonable degree of force under the circumstances that he faced during the incident.

¶ 39    Accordingly, even though the criminal jury acquitted Scholle under the beyond a reasonable doubt standard of proof, the civil jury in this case found by a preponderance of the evidence that his shooting of Cotton was wrongful. That same wrongful conduct underlies Scholle's criminal prosecution and the attorney fees and

costs that he seeks to recover as a measure of damages. In other words, Scholle's own actions in the shooting incident led to his criminal prosecution, at least in part; it was not merely thrust upon him by Cotton's conduct. *See Elijah*, 674 P.2d at 948-49; *Stevens*, 874 P.2d at 496. And considering the civil jury's findings, Scholle doesn't explain — and we don't see — how he could have recovered wrong-of-another damages in any case. *See Rocky Mountain Festivals, Inc.*, 242 P.3d at 1072; *Brochner*, 724 P.2d at 1300.

¶ 40 Given these circumstances, we conclude that any error in the trial court's decision to not submit Scholle's wrong-of-another damages "claim" to the jury was harmless and, therefore, doesn't warrant reversal. *See* C.R.C.P. 61; C.A.R. 35(c); *see also Terra Mgmt. Grp., LLC v. Keaten*, 2025 CO 40, ¶¶ 41-43 (concluding that any error in the trial court's order imposing an adverse inference sanction against a party for the destruction of evidence didn't mandate reversal because the error was harmless).

III.   Disposition

¶ 41 The judgment is affirmed.

JUDGE DUNN and JUSTICE MARTINEZ concur.